## MAYOR AND COUNCIL OF MACON *et al. v.* DYKES.

The negligence of the defendants not being the proximate cause of the plaintiff's injuries, he was not entitled to recover ; and consequently the judgment in his favor was contrary to law.

Argued February 3, — Decided July 28, 1898.

Action for damages. Before Judge Ross. City court of Macon. June term, 1897.

*Minter Wimberly* and *Bacon, Miller & Brunson*, for plaintiffs in error.

*Dessau, Bartlett & Ellis* and *Chambers & Jordan*, contra.

FISH, J.　T. J. Dykes, plaintiff below, sued the Mayor and Council of the City of Macon and the Macon Consolidated Street Railway Company for personal injuries. The undisputed facts proved at the trial were, that plaintiff, while driving a horse attached to a two-wheeled road-cart, along a street in Macon upon which the railroad company had a track, attempted to drive, while the horse was in a walk, across such track at an angle of about forty-five degrees. When the wheels of his cart came in contact with the iron rails of the track, the wheels slipped along the rails and made a scraping noise. The horse immediately began to kick, jump and run, and became wholly unmanageable. He ran at full speed along the street for some one hundred and fifty feet, when the cart collided with a wagon, and plaintiff was violently thrown to the ground and seriously injured. The height of the rails of the track above the surface of the street was variously estimated by the witnesses to be from two to four inches. An ordinance of the city made it unlawful for any street-railroad company to construct or place any track in the streets of the city, the rails of which should be above the level of the street. Plaintiff testified, in reference to his horse: "After driving him nearly a year, I thought [he] was a reliable horse. I had driven him almost every day to the cart and buggy, and ploughed him some. . . I have seen him under conditions in which horses disposed to kick would kick, and he never attempted to do so. He has made several attempts to run away, but was easily controlled, very

biddable. He had never gotten out from under my control at all. I was not afraid of him. He was a high-strung blooded horse, but was not unreasonably frightened. I would rather say he was not easily frightened at all. He was an ordinarily gentle horse. I have had ladies to drive him. I suppose he is about as gentle as the average run of horses. . . He was what I considered a reasonably safe horse. . . I didn't regard him as a family horse. . . He made some few breaks, nothing that I considered at all alarming." The accident occurred on the 26th of August, and the horse had been driven to the road-cart with two persons in it for a distance of 26 miles in six or six and a half hours, immediately preceding the accident. The case was tried by the judge of the city court without the intervention of a jury, and judgment rendered against the defendants. Upon the overruling of their motion for a new trial, they excepted.

Assuming that the defendants were guilty of negligence, the controlling question in the case is: Was their negligence the proximate cause of plaintiff's injuries? There seems to be no absolutely consistent rule to guide us in determining the matter, and each case has been made by the courts to largely depend upon its own facts. The most generally accepted theory of causation, however, is that of natural and probable consequences. 1 Jaggard on Torts, 74, and cases cited; Gilson *v.* Delaware Canal Co., 36 Am. St. Rep. 802, and cases cited on p. 809. The rule is, that, in order to recover for an injury alleged to have resulted from the negligence of another, the injury must be the natural and probable consequence of the negligence; or, as otherwise stated, the wrong and the resulting damage must be known by common experience to be naturally and usually in sequence. The damage, according to the usual course of events, must follow from the wrong. Gerhard *v.* Bates, 2 El. & Bl. 490; Addison on Torts, § 6; Cooley on Torts, 69. The principle in this State seems to be substantially the same. If damages are traceable to an act of negligence, but are not its legal or material consequence, or if other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote and contingent to be the basis of a recovery.

Civil Code, §§ 3912, 3913. This rule of remoteness is applicable both to the damages which are the result of the act and to the cause of the act. *Rucker* v. *Athens Manufacturing Co.*, 54 *Ga.* 84. "It is not only true that damages which are the direct product of the act are the limit, but that only such acts as preponderate largely in producing even a direct result are the subject of suit." *Ib.* "The law, we think wisely, only gives an action for the prime, the leading, effective cause." *Ib.* See also *Belding* v. *Johnson*, 86 *Ga.* 177. "The negligence complained of must be the main, controlling, and preponderating cause, ascertained and distinguished from other causes, in order to be the subject of a recovery." Charge approved in *Brown* v. *Atlanta*, 66 *Ga.* 71. One guilty of negligence only liable for proximate consequence of his wrongful act: *Perry* v. *Central R. R.* Ib. 746; liable only for its reasonable and probable consequences. *Montgomery* v. *East Tenn., Va. & Ga. Ry. Co.*, 94 *Ga.* 332. Negligence must be the chief and preponderating cause of injury. *Gaskins* v. *Atlanta*, 73 *Ga.* 746. "Where a wrongful act puts other forces in operation, which are natural, and which the act would reasonably and probably put in action, the party who puts in force the first efficient cause will be responsible in damages for the injury proved." *Cheeves* v. *Danielly*, 80 *Ga.* 114. In reference to the subject of proximate and remote damages, Prof. Jaggard (1 Torts, 372) says: "In determining what is a proximate and what is a remote consequence, the English courts incline to accept the measure of damages in cases of contracts, and to award such damages as, (*a*) directly and necessarily result from the wrong complained of; and (*b*) such further damages as should have been foreseen by the wrong-doer, in view of his knowledge, actual or constructive, of the special circumstances of the case. The American courts do not seem to have determined very definitely whether the test is—(*a*) what a reasonably prudent man should have foreseen under the circumstances; or (*b*) what follows as a natural result in the ordinary course and constitution of nature."

After a very careful consideration of the law and the controlling undisputed facts in the case at bar, a majority of us are of the opinion that the negligence of the defendants was

not the proximate cause of the injuries of which the plaintiff complained. . His injuries were not the natural and probable consequences of such negligence. The only immediate and direct effect of the contact of the wheels of the cart with the rails of the track was the noise. This noise may have been a natural and probable result of such contact, but it was not reasonable and probable that an ordinarily gentle and road-worthy horse would have been so frightened by it as to instantly cause him to kick, become entirely unmanageable and run away. Such a noise and such an extreme fright in an ordinarily gentle horse as to cause him to kick and run away, we think, are not known by common experience to be naturally and usually in sequence — the one does not follow the other according to the usual course of events. The great fright of the horse for such a cause was extraordinary and exceptional in a reasonably gentle roadster. Plaintiff's injuries can not be traced back to the negligence of the defendants, except through the intermediate action of his horse, which was evidently disposed to be unruly and inclined to run away, although plaintiff considered him reliable, ordinarily gentle, and reasonably safe. A horse that had made several attempts to run away, and, after being driven to a road-cart in which two men were seated, for twenty-six miles on an August day, instantly kicked, became wholly unmanageable and ran away, when the wheels of the cart came in contact with the rails of the track, making a scraping noise, evidently had a trick or habit not common to ordinarily gentle horses. To our minds, this vice of the horse, rather than the negligence of the defendants, was the conspicuously preponderating, effective, and proximate cause of plaintiff's injuries. The direct and immediate cause of plaintiff's injuries was the collision of his cart with the wagon, in consequence of the running away of the horse; it not being alleged that the wagon was a defect in the street. In Brooks *v.* Acton, 117 Mass. 204, which was an action against a town to recover for personal injuries caused by a defect in a highway which caused the horse driven by plaintiff to run, it was held, that, if the vice of the horse caused the running or contributed to the running, the plaintiff could not recover; "the vice of the

horse" meaning some trick or habit of plaintiff's horse other than the natural excitability common to horses; the reason for the rule being that the vice of the horse, and not the defect, was the proximate cause of the plaintiff's injury. Spaulding v. Winslow, 74 Me. 533. See also Cook v. Charlestown, 98 Mass. 80. In these cases, it is true, there was no collision of plaintiff's vehicle with the defect in the highway; but if there had been such collision, and the vice of the horse had caused him to run, and plaintiff had been injured by such running, similar rulings would, doubtless, have been made.

*Judgment reversed. All the Justices concurring.*