## SOUTHERN TRANSPORTATION CO. *v.* HARPER.

1. No acts of negligence having been proved as alleged in the petition, the verdict for the plaintiff should have been set aside as contrary to law and the evidence.

2. The running down and trampling upon a passenger of a steamboat by his fellow-passengers is not a consequence to be reasonably anticipated from the striking of a steamboat against the pier of a drawbridge, it appearing that at the time the vessel was going very slowly, and that her collision with the pier was due to the fact that, owing to a high wind and rising tide, she had drifted out of her course.

Argued July 24, — Decided August 14, 1903.

Action for damages. Before Judge Norwood. City court of Savannah. January 26, 1903.

*Saussy & Saussy,* for plaintiff in error, cited 116 *Ga.* 152 ; 94 U. S. 474–5; 10 Am. Rep. 664, 667 ; 24 Mo. App. 278 ; Am. Cent. Dig., tit. Negligence, §§ 72, 378 ; 12 U. S. App. 381 ; 8 Am. & Eng. Enc. L. (2d ed.) 574.

. *Twiggs & Oliver,* contra, cited Civil Code, §§ 3911–12–13, 3798–9; *Ga. Rep.* 75/582; 77/412; 78/321 ; 80/114; 91/404; 114/731; 110 U. S. 338; 39 Fed. 440, 445–6.

CANDLER, J.　·This was a suit for damages on account of personal injuries, in which the plaintiff obtained a verdict for $500. The case comes before this court on exceptions to the overruling of the defendant's motion for a new trial.　It appears that the plaintiff was a passenger on a steamboat of the defendant company, which plied on the Savannah river between Savannah and Augusta, and in the course of its passage it was ·necessary for the vessel to pass between the piers of the drawbridge situated a few miles above the city of Savannah.　The petition alleged that "the pilot at the wheel of said steamer, then and there steering and piloting the same as an officer, agent, servant, and employee of said defendant company, ran the said steamer into and against a pier" of the bridge to which reference has been made.· The plaintiff was at the time seated in a chair in a portion of the boat reserved for negro passengers.　He testified : "I was knocked from my chair when the boat hit the bridge, and the people were pouring out.　I jumped up, and twenty-five or thirty rushed over me and knocked me back in the chair. . . I started to get up again. Eight or ten knocked me down.　All the people rushed from that side, and everybody rushed out.　Being helpless and down on the floor, the people rushed over me."　There was ample evidence to warrant the jury in finding that the plaintiff's pain and suffering had been intense, and that his injuries were serious and permanent. Aside from the extract from the petition which we have already quoted, the only allegation of negligence was in the following language:　"Your petitioner avers that the injuries he has sustained, as described above, are due entirely to the negligence of the said defendant, its servants, agents, and employees, in running the said steamer into and striking against the pier of said . . bridge." The defense relied on by the defendant company, which was substantially supported by the evidence offered in its behalf, was, in

effect, that the collision between the vessel and the pier of the bridge was due to causes entirely beyond its control; that its officers and employees were at the time in the exercise of all possible care and diligence; that the distance between the piers of the bridge through which the steamer had to pass was only a few feet greater than the width of the boat, making it difficult under the most favorable circumstances for this vessel to pass through without striking one side or the other; that on the occasion in question the tide was rising and a high wind blowing, rendering the difficulty still greater; and that on account of the tide and wind the steamer "was drifted out of her course, in spite of the efforts of her captain to steer her free of the said drawbridge, and after so entering the said opening, the starboard quarter of the said steamer struck against the pier of the said bridge."    The answer also averred, "that, if injured at all, the said plaintiff was injured by another and distinct cause" from the striking of the vessel against the pier, "to wit, by the passengers in the cabin on the lower deck with plaintiff ruthlessly, carelessly, and negligently running over and trampling upon him; that this defendant had no control of the said movements of the said passengers; and that the said injuries of the said plaintiff thus sustained are not the legal and natural result of the alleged striking of the pier of the said bridge."

1. After a careful reading of the record, we are led to the conclusion that the verdict of the jury was contrary to law and the evidence, and should have been set aside on motion for new trial. There was not a particle of evidence that the pilot or any other employee of the defendant on the boat was guilty of negligence in any particular.    Granting the existence of a legal presumption of negligence from the fact that the boat struck the pier, that presumption was completely overcome by the evidence for the defendant, which was to the effect that everything possible was done to make the passage of the drawbridge in safety, and that the collision was due to natural causes over which the defendant had no control.    Indeed, one of the plaintiff's own witnesses testified: "The elements got the best of them.    If 40,000 pilots were on that boat they could not have done any better. . . It was one of those circumstances when any boat could have done the same. . . The boat was subject to the elements.    If anybody was responsible for it, God Almighty himself was."    It was contended, how-

ever, that the evidence showed that the defendant company was negligent in attempting to go between the piers of the drawbridge under the conditions which were shown to have prevailed on the night when the plaintiff's injuries were received. A sufficient reply to this contention is that the petition contains no allegation of negligence in this particular, and the plaintiff can only recover on account of the negligence alleged in his declaration. An allegation that the defendant was negligent in "running the said steamer into and striking against the pier" of a drawbridge, general as it is, is not supported by proof that the employees of the defendant, in the exercise of all due care in the operation of the vessel, attempted to pass through a drawbridge under circumstances that made the passage obviously unsafe. It was also sought to show by admissions of the captain of the vessel that the speaking-trumpet and the bell-rope, by which signals were communicated to the engine-room, were not in order on the occasion in question; and a witness testified that, in his opinion, "if the engines had been in condition to respond to a backward movement signal, . . the accident could have been prevented." There was nothing in the petition, however, to indicate that the plaintiff sought a recovery on the ground of the negligent failure of the defendant to provide its vessel with proper machinery or suitable appliances, and it is apparent at a glance that no recovery could be properly founded upon this evidence.

2. Independently of what has been said, we do not think that the act of the defendant company, through its employees, in permitting the vessel to collide with the pier, even if negligent, can properly be said to have been the natural and probable cause of the injuries sustained by the plaintiff. It appears from the uncontradicted evidence that in approaching the drawbridge the steamer proceeded very slowly, so as to drift into the opening between the piers. There was a fender around these piers, in the shape of pilings, to prevent vessels passing through from striking against the stone piers. In entering the opening the forward part of the vessel struck against the piling, and the wind swept the boat around so as to cause her to strike against the pier. It does not clearly appear just at what time the negroes became frightened and ran over the plaintiff,—whether at the time that the boat ran on to the piling, or after she had swung around and struck the pier.

But be that as it may, there was nothing in the act of the employees of the defendant company, conceding that they were negligent, that would naturally and ordinarily give rise to the stampeding of a crowd of passengers. They could not reasonably, be required to anticipate that on account of such an occurrence a number of negroes would become panic-stricken and run down and trample, almost into insensibility, one of their number. We are aware of the great difficulty in deciding, in cases of this kind, just what is and what is not a probable and proximate cause of an injury. We refer, however, to the admirable opinion of Mr. Justice Fish in the case of *Mayor of Macon* v. *Dykes,* 103 *Ga.* 847, for an elaborate discussion of the subject. In that case probably all the Georgia cases bearing on this branch of the law are cited, and the *Dykes* case itself is strong authority for what is now held. The case of *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 152, is not in point, and is easily distinguishable from the case now under consideration. In the *Webb* case, the negligent act of the railroad company caused the plaintiff's decedent to be thrown from its train upon a track running alongside the one on which the train was, and while he was lying upon that track an engine of another railroad company ran over and killed him. It was held, in effect, that the passage of trains upon this adjoining track was an ordinary and usual occurrence, and one which should have been anticipated by the defendant; and that as this occurrence was in the direct chain of causation with the negligent act of the defendant, it was liable therefor. In this case, however, the immediate cause of the plaintiff's injuries was his being thrown down and trampled upon by his fellow-passengers, and that occurrence was not a probable result of the alleged negligence of the defendant, or one which should reasonably have been anticipated by it.

*Judgment reversed. All the Justices concur.*