### 17510, 17537. WATSON *v.* GEORGIA SOUTHERN & FLORIDA RAILWAY CO., and *vice versa.*

1. In an action against a railway company, under the Federal employer's liability act (U. S. Comp. St. §§ 8657-8665) to recover damages for personal injuries to, or the death of, an employee, liability can not be predicated upon the defendant's violation of a Federal statute enacted for the safety of employees, unless there is a causal connection between such violation and the injury or death.
2. Violation of the Federal boiler-inspection act (U. S. Comp St. § 8630 et seq.) by a railway company, in failing to observe a rule of the interstate commerce commission requiring that each locomotive used in yard service at night be equipped with two lights in good condition, one in the front and one in the rear, of sufficient illumination to enable a person in the cab, having "the usual visual capacity required of engineermen, to see in a clear atmosphere a dark object as large as a man of average size standing erect" at a distance of 300 feet, was not a contributing proximate cause of the death of an employee who, in order to reach the rear of the tender for the purpose of hanging a lantern thereon as required by a private rule of the company, undertook to walk upon a wet and slippery iron rod extending around the tender, and who, merely because of the inherent difficulty of accomplishing this act, slipped and fell, and thus received injuries which resulted in his death.
3. Measured by the principles enunciated above, the petition in this case failed to set forth a cause of action. The court therefore did not err in sustaining the general demurrer thereto.

Decided February 14, 1927. Rehearing denied February 26, 1927.

Action for damages; from city court of Macon—Judge Hall. May 28, 1926.

Application for certiorari was made to the Supreme Court.

*O. L. Clements, John R. L. Smith, Joseph LeConte Smith, W. E. Martin Jr.,* for plaintiff.

*Hall, Grice & Bloch,* for defendant.

Bell, J.　This action, under the Federal employer's liability

---

Master and Servant, 39 C. J. p. 442, n. 32; p. 445, n. 33; p. 448, n. 46; p. 916, n. 15; p. 1070, n. 62.

act of April 22, 1908, against the railway company, for the wrongful death of the plaintiff's intestate, is predicated solely upon the violation by the railroad of the Federal boiler-inspection act of February 17, 1911, as amended by several later enactments, including that of June 7, 1924, in its failure to observe rule 131 of the interstate-commerce commission requiring that each locomotive used in yard service at night should be equipped with two lights in good condition, one in the front and one in the rear, of sufficient illumination to enable a person in the cab, having "the usual visual capacity required of engineermen to see, in a clear atmosphere, a dark object as large as a man of average size standing erect" at a distance of 300 feet. Watson, the decedent, employed as a hostler's helper, was assisting in moving a locomotive from the defendant's roundhouse in Macon, Georgia, across the yards to the terminal station to be there attached to an interstate train. This engine was not provided with any light whatever at its rear, in accordance with the rule of the interstate-commerce commission. It had previously been equipped with such light, but it was in disrepair and completely out of service at the time of the decedent's death. The defendant had promulgated a private or internal rule providing that when an engine is running backwards at night a white light must be displayed on the rear of the tender. The decedent had, in the line of his duty, been manipulating the switches and giving signals to the hostler in the cab of the locomotive in the removal thereof as indicated above. In turning the switches he carried a lantern, and, after turning the last switch, he undertook to climb upon the rear of the tender for the purpose of hanging the lantern thereon as the white light to be displayed in obedience to the rule of the company. In order to do this it was necessary for him to "pull himself up on a side of said tender and walk upon a very small metal rod around the rear of said tender while the same was in motion. It was a very dark, rainy, stormy night, and said locomotive and its appurtenances were wet and slippery, so that the said feat which said [decedent] was required to perform was extremely dangerous." Consequently, his foot slipped and he fell upon the track, receiving injuries which resulted in his death. This is a statement of the substantial facts as they are alleged in the petition. The court dismissed the petition on general demurrer, and the plaintiff excepted.

The petition shows upon its face that the decedent was engaged in an act obviously so dangerous that a person of ordinary prudence would not have undertaken it. But if the railway company was in the violation of a Federal statute enacted for the safety of employees, and such violation was a contributing proximate cause of the decedent's death, the fact that he may have been guilty of an obviously dangerous act, or that his conduct was such that in other circumstances it might have amounted to an assumption of the risk, is a matter to be ignored in determining the rights of the parties. That such is the meaning of the liability act has been held in numerous cases.

However, it was not the purpose of this act to exclude the doctrine of proximate causation, as it is generally understood and applied in the courts. Where an action against a railway company to recover damages for injury to one of its employees is grounded upon the defendant's violation of a Federal statute, there must necessarily, as in other cases, be a causal connection between the company's delinquency and the injury, in order to render the company liable. If we are to understand that counsel for the plaintiff make a contention to the contrary, we must overrule it, in view of a number of decisions of the Supreme Court of the United States, including Davis *v.* Wolfe, 263 U. S. 239 (68 L. ed. 284, 44 Sup. Ct. 64). In that case Mr. Justice Sanford, after examining four other cases therein cited, said: "The rule clearly deducible from these four cases is that, on the one hand, an employee can not recover under the safety-appliance act if the failure to comply with its requirements is not a proximate cause of the accident, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; and, on the other hand, he can recover if the failure to comply with the requirements of the act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection."

The company's wrong, even if it consists of the violation of one of the safety statutes, can impose no liability unless it at least bears to the injury such relation that the company could be regarded as a joint tort feasor, considering the conduct of the employee, if we may, as though it were the conduct of a third person. In that

case the company's violation of the statute would be regarded *in law* as the sole proximate cause of the injury, regardless of what the conduct of the employee, as contributing thereto or as assuming the risk, may have been *in fact*. Even assuming that the defendant violated the boiler-inspection act as alleged in the present case, we think that such violation was not a contributing proximate cause of the decedent's death, but that it merely created an "incidental condition or situation" in which the decedent caused his own death in the performance of an obviously dangerous act. We will not say that the statute which is alleged in this case to have been violated was not enacted for the safety of the decedent while riding upon an engine required to be lighted as prescribed; nor that he might not have been within the protection of the act when going upon the tender, even in the manner set forth in the petition, if, as was the case in Grand Trunk R. Co. *v.* Lindsay, 233 U. S. 42 (58 L. ed. 838, 34 Sup. Ct. 581, Ann. Cas. 1914C, 168), he had done so for the purpose of ascertaining and, if possible, remedying the defect caused by the company's nonperformance of its duty under the statute, or if, as was true of the employee in Chicago R. Co. *v.* Schendel, 267 U. S. 287 (69 L. ed. 614, 45 Sup. Ct. 303), he had gone into the dangerous place because the equipment of the car did not meet the statutory requirements especially intended to protect men in his position. See, in this connection, L. & N. R. Co. *v.* Layton, 243 U. S. 617 (61 L. ed. 931, 37 Sup. Ct. 456); Minneapolis &c. R. Co. *v.* Goneau, 269 U. S. 406 (70 L. ed. 146, 335, 46 Sup. Ct. 129).

We are of the opinion, however, that the decedent was not endeavoring to make amends for his master's violation of the law by remedying, and if possible getting along with, the deficient means and appliances provided, but that on the other hand he was engaged simply in obeying a private rule of his master to do something entirely different from what the latter was required to do for the safety of his employees under the statute. He was attempting to place the lantern on the tender because his master had told him to do so, and not because the lantern could answer in place of the light specified in the rule of the interstate-commerce commission; nor because he was seeking to supply for his own safety that which his master ought to have supplied but did not. If the rule of the company had required the decedent to go

upon the tender and to ring a bell or blow a horn, or expose a red light, instead of to display a white light as from a lantern, and if, in obeying this rule, the decedent had slipped and fallen and had thus sustained injury, it certainly could not have been said in that case that the defendant's violation of the statute was a contributing, proximate cause of the injury.

The case actually before us is not materially different in those essential features by which we are to determine its standing before the law. The character of the light emanating from the lantern as to strength and brilliancy is not shown, and in the absence of anything on this point except what, if anything, we may know judicially of lanterns in such use, we should take it that this light was incomparable with that expected by the rule of the interstate-commerce commission. It seems, therefore, that the rule of the company, as to the hanging out of the lantern, could not be considered as more than a mere pretense at a compliance with the law. We should prefer to regard it, however, not as a pretense, but as a means adopted by the company to reduce the accidents which might result from its failure to perform its prescribed legal duty. It is not alleged that the required light would have shone upon the place from which the plaintiff fell, or would have added to his safety in doing the particular act attempted. Moreover, the statute under which the right is claimed in this case was not enacted in order to make it safe for the decedent to walk upon a rod around the tender for the purpose of placing a lantern on the rear of the tender in obedience to a private rule of the company. And yet, if it had transpired that, while he was doing so, the engine collided with another object because of the absence of the light demanded by the law, and if, in consequence of such collision, the plaintiff had been hurt or killed, the company might, perhaps, have been liable. There was no such collision, however; and since the casualty did not result from the failure or inability of the decedent or any member of the crew of the particular engine to see as they should have seen by a light conforming to the legal requirements, or from the failure or inability of any other person elsewhere to observe the approaching engine as it could have been observed if properly lighted, there appears no causal connection between the defendant's violation of the statute and the decedent's death. In addition to the authorities already cited, see St. Louis R. Co. *v.*

Conarty, 238 U. S. 243 (59 L. ed. 1290, 35 S. Ct. 785) ; Lang v.
N. Y. Ry. Co., 255 U. S. 455 (65 L. ed. 734, 41 S. Ct. 381) ;
Great N. Co. v. Otos, 239 U. S. 349 (60 L. ed. 322, 36 S. Ct.
124) ; Atchison &c. R. Co. v. Swearingen, 239 U. S. 339 (60 L. ed.
317, 36 S. Ct. 121) ; San Antonio R. Co. v. Wagner, 241 U. S. 476
(60 L. ed. 1110, 36 S. Ct. 626) ; Spokane R. Co. v. Campbell, 241
U. S. 497 (60 L. ed. 1125, 36 S. Ct. 683) ; Atlantic R. Co. v. Par-
ker, 242 U. S. 57 (61 L. ed. 150, 37 S. Ct. 69) ; Baltimore &c.
R. Co. v. Wilson, 242 U. S. 295 (61 L. ed. 312, 37 S. Ct. 123) ;
Louisville R. Co. v. Layton, 243 U. S. 617 (61 L. ed. 931, 37
S. Ct. 456) ; Great Northern R. Co. v. Donalson, 246 U. S. 121,
62 L. ed. 616, 38 S. Ct. 230, Ann. Cas. 1918C, 581) ; Baltimore
&c. R. Co. v. Groeger, 266 U. S. 521 (69 L. ed. 419, 45 S. Ct.
169) ; Bohm v. Chicago R. Co., 161 Minn. 74 (200 N. W. 804).

The affirmance of judgment on the main bill of exceptions makes
it unnecessary to pass upon the cross-bill.

*Judgment affirmed on the main bill of exceptions; cross-bill dis-
missed. Jenkins, P. J., and Stephens, J., concur.*