21623. COCHRAN *v.* WADLEY SOUTHERN RAILWAY CO.

DECIDED OCTOBER 8, 1931.

*Alfred Herrington Jr.,* for plaintiff.

*A. S. Bradley, A. S. Bradley Jr.,* for defendant.

LUKE, J. The only question presented by the record in this case is whether or not the trial judge erred in sustaining the general demurrer to the petition. Omitting some of its formal allegations, the petition of H. G. Cochran against Wadley Southern Railway Company alleges in substance: The defendant leased to the Pan-American Petroleum Corporation a certain lot on the eastern side of the right of way of the defendant and adjacent thereto for a wholesale storage and distribution plant for gasoline, kerosene, and oils, and a warehouse for the storage of trucks. Said lot "was located on a curve in said railway between a branch fifty feet approximately on the south side and the said cotton-gin aforesaid on the northwest side." On said lot there was a private road running in a westerly direction across the lot and the right of way of said railroad into Coleman or Railroad street, over which said Pan-American Petroleum Corporation "had a right to convey its gasoline, kerosene and oils." Said private road was the only road over which said Pan-American Corporation could convey its products to market. "Said Pan-American Petroleum Corporation and its agents and employees had an easement over said right of way and said railroad by said private way for the purpose aforesaid, which was necessarily incidental to their said lease, which was well known to the defendant." On June 18, 1928, the plaintiff was an agent of said Petroleum Company, and manager of its said plant and warehouse. On the east side of said right of way, the defendant had a private telephone line, on each side and in front of said lot leased to said Petroleum Company. The defendant allowed said line to "sag and be in a loose condition" in front of said lot, but said condition was not known to the plaintiff, for the reason that the heavy foliage of a line of pecan trees on the front

of said lot "hid from view the loose and sagging condition of said line." "Said line was allowed to be in said condition by the negligence or lack of ordinary care of the defendant." "The condition of said line could have been known by the defendant by the exercise of ordinary care." On June 18, 1928, the plaintiff, as manager of said Petroleum Corporation, sent a colored truck-driver with a truck full of gasoline for market over said private road and across said right of way, "when, to the surprise of petitioner, said wire caught under the handle of the filler-cap of the front compartment of said tank." "Said occurrence was caused by the said loose condition and sagging of said wire, due to the said lack of ordinary care of the said defendant." "Said occurrence caused the said truck to stall, or stop, suddenly and immediately, upon the railroad track of said defendant." (Paragraph 17.) "When said truck stopped as aforesaid, petitioner, as was his duty, rushed forward, endeavoring to disentangle the said wire from said filler-cap handle, and for said purpose mounted said truck." (Paragraph 18.) "While petitioner was in the effort of disentangling said wire from said handle of said filler-cap, he heard a train of said defendant approaching nearby from the south side going north, which was likely to run against said truck. Petitioner knew that the obstruction on said railway was not visible to the engineer and engine employee of said defendant on said train, on account of the branch on the south side and the fact that he was at a point on said railway on the curve, so as to make the branch in a measure between the train and said obstruction." (Paragraph 19.) "On account of said peril said plaintiff used an extraordinary effort to remove said wire, and broke said wire." (Paragraph 20.) "By breaking said wire said plaintiff was, on account of the extraordinary effort and force used, thrown from said truck on the said track of said defendant, the back of his head falling on the rail." Plaintiff was injured in described particulars. It was alleged that "this conduct in disentangling the wire was caused by the negligence of the defendant as stated by allowing said wire to sag and remain loose;" and that "said negligence of said defendant was the proximate cause of the injuries and damage done petitioner."

"The most generally accepted theory of causation . . is that of natural and probable consequences." *Mayor &c. of Macon* v. *Dykes,* 103 *Ga.* 847, 848 (31 S. E. 443). The Civil Code (1910),

§ 4510, declares: "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. But damages traceable to the act, but not its legal or material consequence, are too remote and contingent." Section 4509 reads: "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer."

We, have set out the material allegations of the petition somewhat fully, and shall not repeat them. We call special attention, however, to paragraphs 17, 18, 19, and 20, which show how and why the plaintiff was injured. A careful consideration of the case satisfies us that the petition fails to show that the alleged negligence of the defendant was the proximate cause of the plaintiff's injuries. Therefore we hold that the trial judge did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*