25951. POWELL, receiver, *et al.* v. WATERS, administratrix.

DECIDED FEBRUARY 27, 1937.

*Anderson, Cann & Dunn, Gazan, Walsh & Bernstein,* for plaintiffs in error.

*John C. Wylly, Kennedy & McWhorter,* contra.

SUTTON, J. The plaintiff brought suit for damages, alleging that her intestate, A. R. Waters, on May 23, 1935, was employed

308

by the defendants in the capacity of engineer of a passenger-train running from Columbia, S. C., to Savannah, Ga.; that on a trip between such points, at Stillwell, Ga., about 2:35 o'clock p. m., a pump which was a part of the air-brake system became stuck because of its faulty condition, and failed to function, thus rendering the entire system of air-brakes useless; that by reason of the failure of the air-pump to function the air pressure at the engine could not be maintained at the proper level, and the brakes could not be controlled from the engine, and that the train was halted at Stillwell, Ga., when the brakes became automatically applied, and could not be released by the controls in the engine unless the defect in the pump could be remedied so that it would run again and build up the air pressure at the engine; that the railroad officials in Savannah were notified of the situation and were asked for instructions, and no instructions were given to the train crew, nor was another engine sent from Savannah to pull the train into Savannah; that the decedent, in line with his duty as engineer to do all he could to bring the train into Savannah, attempted to start the air-pump to functioning by going out on the runway or platform leading from the cab of the engine along the boiler thereof, on the side on which the air-pump was installed, and pounding on the drum enclosing the air-pump with a hammer, that being the usual method of remedying the condition of the pump; that the pump itself, due to the fact that it has two hundred pounds per square inch of live steam on it, is extremely hot, and the heat from the engine and the boiler is so great that one can hardly stand on the platform; that this heat, together with the heavy and unusual exertion caused by pounding on the drum, overheated, overexerted, and strained the decedent, so that after working on the pump for approximately an hour he became exhausted and complained of feeling badly; that after it became apparent that the condition of the air-pump could not be remedied, and that orders would not be received from the officials in Savannah and help sent to them, the deceased, though overheated and exhausted, assisted in "bleeding" the train, that is, in releasing the air in the train line and in the reserve air-tank under each car of the train, in order that the brakes would be released and the train could be moved, and the deceased then ran the train into Savannah without brakes, as he had a right

to do, as Savannah was the nearest place at which the pump could be fixed; that the train, being operated without air-brakes, had to be operated at an extremely low rate of speed and with unusual care and attention, all of which still further overexerted and exhausted the deceased; that the condition of the deceased, as a result of the overexertion and over-straining at Stillwell, did not become critical until after the train had arrived in Savannah at 5 o'clock p. m.; that on his arrival in Savannah his condition was so critical that the defendants' physician was summoned, and attended him at the railroad station; that he was then moved to his home where also he was attended by the physician, but he died at 7 o'clock p. m. After stating the deceased's age, earning capacity, etc., as a basis for the amount of damages, the petition alleged that the defendants were negligent: (a) in not furnishing the train with a good and sufficient air-brake system; (b) in failing to send another engine from Savannah to pull the train in; (c) in failing through its officials to issue instructions to the train crew and to the deceased as to what should be done under the circumstances; (d) in failing to provide the deceased a safe place in which to work; all of which negligence the plaintiff alleged by amendment to be the proximate cause of the death of the decedent. The defendants filed general and special demurrers which the court overruled, and the exception is to that judgment.

This case arose under the Federal employers liability law, and was predicated on a violation of the safety-appliance act, in that the air-pump on the engine, which was a part of the air-brake system and furnished compressed air for the operation of the defendants' train, became stuck and failed to function because of its faulty condition, rendering the entire system of air-brakes useless, which, the plaintiff contends, caused the injury to and the death of the decedent, as alleged in her petition. The Federal safety-appliance act, as contained in U. S. C. A., provides in part, title 45, section 1: "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train-brakes that the engineer on the locomotive drawing such train can

control its speed without requiring brakemen to use the common hand-brake for that purpose." Title 45, section 7: "Any employee of any common carrier engaged in interstate commerce by railroad who may be injured by any locomotive, car, or train in use contrary to the provision of this chapter shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge." Section 13 of the same title provides that "where any car shall have been properly equipped, as provided in this chapter, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this chapter, if such movement is necessary to make such repairs and such repairs can not be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier; and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee, caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure, or which is not maintained in accordance with the requirements of this chapter." Section 51 provides: "Every common carrier by railroad while engaged in [interstate commerce] . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment." Section 53 provides: "In all actions hereafter brought against any such common carrier by railroad, under or by virtue of any of the provisions of this chapter, to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the

employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable· to such employee: Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." Section 54 provides: "In any action brought against any common carrier under or by virtue of any of the provisions of this chapter, to recover damages ·for in-juries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The plaintiff contends that her petition shows a violation of the safety-appliance act by the defendants, and that such violation was the proximate cause of the injury and death of the decedent. It is conceded by counsel for the defendants ·that if the decedent came to his death as the proximate result of a defect in the air-brake system of the train on which he was the engineer, a defense of contributory negligence or assumption of risk could not be urged against him. But they contend that the plaintiff's petition clearly shows that the proximate cause of the death of the engineer was not the defect in the air-brake system, or the negligence of the defendants, but that his death was the result of his own intervening act and conduct in overheating and overexerting himself. So the controlling question to be determined is: what was the proximate cause of the injury and death of the decedent? The proximate cause of an injury is ordinarily a question for the jury. But where it appears from the undisputed facts that the act or negligence complained of is not the efficient proximate cause of the injury, then the question is properly one for determination by the court. "The most generally accepted theory of causation is that of natural and probable consequences (*Mayor &c. of Macon* v. *Dykes,* 103 *Ga.* 847, 848, 31 S. E. 443) ; and in order to hold the defendant liable the petition must show either that the act complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural,

312

and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the original wrong-doer." *Rome Railway &c. Co.* v. *Jones,* 33 *Ga. App.* 617 (37 S. E. 244). It was said, in Milwaukee & St. Paul Railway Co. v. Kellogg, 94 U. S. 469, 475 (24 L. ed. 256) : "The question always is: was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." See also Armour *v.* Harcrow, 217 Fed. 224, 227 (2) ; Chicago, B. & Q. R. Co. *v.* Gelvin, 238 Fed. 14, 15; Salsedo *v.* Palmer, 278 Fed. 92; Davis *v.* Schroeder, 291 Fed. 47; Shepard *v.* Denver Tramway Corporation, 62 Fed. (2d) 339; Fort Smith Gas. Co. *v.* Cloud, 75 Fed. (2d) 413; *Henderson* v. *Dade Coal Co.,* 100 *Ga.* 568 (25 S. E. 251) ; *Mayor &c. of Macon* v. *Dykes,* supra; *Andrews* v. *Kinsel,* 114 *Ga.* 390 (40 S. E. 300, 88 Am. St. R. 25). In McCalmont *v.* Pennsylvania R. Co., 283 Fed. 736 (3) it was held: "A car with a defective coupler, standing with others on a dead track awaiting transfer to the shops for repair, had been attached to the next car by a chain, and plaintiff's intestate, foreman of car inspectors, passing with a helper, went between the cars to shorten the chain, when a collision was caused by the shunting of another car on the track, and he was killed. The rules required all employees, when working about standing cars, to set out a signal flag, but he did not. *Held,* that the proximate cause of the collision and of the injury was the failure to set out the flag, and that the defective coupler was not a cause, but only a condition of the injury, and did not create liability in the company under safety-appliance act April 14, 1910, § 4 (Comp. St. § 8621)." Certiorari was denied: 260 U. S. 751 (43 Sup. Ct. 250).

In Lang *v.* New York Central R. Co., 255 U. S. 455, a railroad

car loaded with iron had been placed on a siding at a station. On the same track was standing another car destined for another station. The car loaded with iron was defective, in violation of the safety-appliance act, and had been on the siding several days, waiting to be unloaded by the consignee. Its condition was known to the crew of the way freight-train, and to the plaintiff's intestate, before the accident. In getting out the car that was to be carried to the next station, Farnham, the engineer went into the siding from the west end, pulled out a string of six cars, including the car to be carried to Farnham, then shunted the Farnham car onto an adjoining track, placed two of the other cars which had been hauled out onto a third track, and then kicked the other three cars back onto the track where the crippled car stood. Plaintiff's intestate was on top of one of these three cars for the purpose of setting the brakes and so placing them on this siding as not to come in contact with the crippled car. For some reason he did not stop the three cars moving on this track before the cars came in contact with the crippled car. The cars collided; and owing to the absence of a coupler attachment, in violation of the Federal safety-appliance act, the intestate's leg was caught between the end of the two cars, and he was so injured that he died. It evidently was not the intention of any of the crew to disturb, couple to, or move the crippled car. Owing to the absence of the coupler attachment on the crippled car, the decedent's leg was caught between the ends of the two cars. Recovery was sought on the theory that his death was the result of a violation of the safety-appliance act. The Supreme Court of the United States held that the plaintiff was not entitled to recover; that it was the duty of the crew and of the decedent to stop the colliding car, and to set the brakes on it so as not to come in contact with the crippled car; that he failed to perform that duty; and that "if it may be said that notwithstanding he would not have been injured if the car collided with had been equipped with drawbar and coupler, we answer, as the Court of Appeals answered, 'still, the collision was not the proximate result of the defect,' or, in other words, and as expressed in effect in the Conarty case, that the collision under the evidence can not be attributable to a violation of the provisions of the law, but only had they been complied with it (the collision) would not have resulted in the in-

314

jury to the deceased." In *Watson* v. *Georgia Southern &c. Ry. Co.*, 36 *Ga. App.* 452, 454 (136 S. E. 921) it was said: "Where an action against a railway company to recover damages for injury to one of its employees is grounded upon the defendant's violation of a Federal statute, there must necessarily, as in other cases, be a causal connection between the company's delinquency and the injury, in order to render the company liable." In *Piedmont Hospital* v. *Truitt*, 48 *Ga. App.* 232 (132 S. E. 236) it was said: "A prior cause can not be made the basis of an action because it furnished the condition and gave rise to the occasion by which the injury was made possible, where there intervened an unrelated and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion."

In *Minneapolis &c. Ry.* v. *Goneau*, 269 U. S. 406 (46 Sup. Ct. 129), the cars in a freight-train, while crossing a bridge, parted because of a defective automatic coupler, and the brakeman went to remedy the defect. The further facts, as stated by the court, were: "To make the coupling it was necessary to get the carrier iron back in place, so as to hold the coupler in a position where it would interlock. He made an effort to do this by pulling the carrier iron back into a right-angled position and placing wooden wedges or 'shims' which he found on the bank, between it and the drawbar. This raised the coupler so that it would partially interlock. Upon his signals, the cars were then coupled together and the train started upon its journey. But after proceeding a few feet, it again broke and the two sections stopped a second time upon the bridge. Finding the coupler in its former condition, he then attempted to make another coupling. To do this he again stood between the cars on the open ties, with his back to the outside of the bridge; and, as before, put one knee under the drawbar to raise it from the carrier iron, and with one hand attempted to pull the carrier iron around to a right angle with the drawbar. The carrier iron caught in some manner, and he failed at first to move it. He then braced himself, lifted more with his knee, and gave the carrier iron a harder pull, with both hands. This time it 'came easy,' causing his right foot to drop down between the ties; and, losing his balance, he fell backwards over the side of the bridge to the ground below, sustaining serious injuries." In discussing the proximate cause the court said: "Since he was

injured as a result of the defect in the coupler, while attempting to adjust it for the purpose of making an immediate coupling, the defective coupler was clearly a proximate cause of the accident as distinguished from the condition creating the situation in which it occurred. And under the employer's liability act he can not be held to have assumed the risk. . . As there was substantial evidence tending to show that the defective coupler was a proximate cause of the accident resulting in the injury to Goneau while he was engaged in making a coupling in the discharge of his duty, the case was rightly submitted to the jury under the safety-appliance act; and the issues having been determined by the jury in his favor, the judgment of the trial court was properly affirmed. Davis v. Wolfe, 263 U. S. 239, 244 [44 Sup. Ct. 64]." In Davis v. Wolfe, just cited, it was said: "The rule clearly deducible from these four cases [discussed in the opinion] is that, on the one hand, an employee can not recover under the safety-appliance act if the failure to comply with its requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; and, on the other hand, he can recover if the failure to comply with the requirements of the act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection."

Counsel for the plaintiff rely mainly on the Goneau case, supra. But it will be seen from a careful reading that it is distinguishable from the case at bar. In that and similar cases where it was held that the defendant was liable for a violation of the safety-appliance act, such violation was in some way the direct contributing cause of the injury complained of, instead of just creating a condition or situation without which the alleged injury would not have occurred, as was true in this case and the cases herein cited in support of the conclusion we have reached. It must be taken as true that in the case at bar there was a violation of the safety-appliance act by the defendants, and it is so alleged in the plaintiff's petition, and the case is here on an exception to the judgment overruling the general demurrer. If such violation was the contributing proximate cause of the decedent's injury, the plain-

316

tiff is entitled to recover; but if it was only incidental thereto, that is, that it created an incidental condition or situation in which the accident, otherwise caused, resulted in his injury and death, then the plaintiff can not recover. The air-pump stuck, and the air-brake system failed to function. The deceased engineer, as was his duty, undertook to find out whether the defective appliance could be repaired before leaving Stillwell, the point where the breakdown occurred, and he went out on the runway leading to the engine along the boiler where the pump was located, and with a hammer pounded on the drum enclosing the air-pump. The pump has 250 pounds of live steam and is extremely hot, and the heat from the engine and boiler is so great that one can hardly stand on this runway or platform, although the engineer worked for approximately an hour on the pump under this condition and became overheated and overexerted, and in this way suffered the injury from which he subsequently died. Was the defective pump the proximate cause of his injury and death, or was his own intervening act and conduct responsible therefor? If the defect in the air-pump had not existed, and the engineer had gone out on the runway or platform and exerted himself in the extreme heat produced by the air-pump, the engine, and the boiler, for approximately an hour, as he did here, could it be said that he would not have suffered the same consequences as alleged by the plaintiff? We think not. If this be true, then it follows that his injury was occasioned by his own act or conduct. Likewise, where the safety-appliance act was violated, as here, which created only the incidental condition or situation in which the deceased was responsible for his own injury, such violation would not render the defendants liable. The court erred in overruling the general demurrer to the petition.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*