31001, 31002. ATLANTIC COAST LINE RAILROAD COMPANY *v.* ANDERSON; and *vice versa.*

344

DECIDED NOVEMBER 27, 1945. REHEARING DENIED DECEMBER 19, 1945.

*Pope & Baker, Bennet, Peacock & Perry,* for plaintiff in error. *Arnold, Gambrell & Arnold, Ira Carlisle,* contra.

PARKER, J. ■ We have carefully considered the rulings complained of in the cross-bill of exceptions, and find no error therein. We think that the trial court properly sustained the special demurrers to which exception is taken by the plaintiff in the lower court.

■ We think that all of the rulings complained of by the defendant on its demurrers were correct with one exception. The demurrer to the allegations charging the conductor of train No. 12 with negligence in failing to pull the air-signal whistle cord, and thus warn the engineer of the meet order, should have been sustained. We base this ruling on what seems to be an overwhelming line of cases from the Supreme Court of the United

States and other Federal courts. The rights and obligations of the plaintiff in this case, the same being an action under the Federal employers' liability act, depend upon that act and applicable principles of common law as interpreted by the Federal courts. Central Vermont Ry. Co. *v.* White, 238 U. S. 507 (35 Sup. Ct. 865, 59 L. ed. 1433, Ann. Cas. 1916 B, 252); Chicago, M. & St. Paul Ry. Co. *v.* Coogan, 271 U. S. 472 (46 Sup. Ct. 564, 70 L. ed. 1041); Willis *v.* Pennsylvania R. Co., 122 Fed. 2d, 248. This well-known rule has been recognized by our courts. *Georgia R.* **v.** *Cubbedge, Hazelhurst & Co.,* 75 *Ga.* 321; *Clews* **v.** *Mumford,* 78 *Ga.* 476 (3 S. E. 267); *Bugg* **v.** *Consolidated Grocery Co.,* 155 *Ga.* 550 (118 S. E. 56); *Hansford* **v.** *Nat. Bank of Tifton,* 10 *Ga. App.* 270 (73 S. E. 405); *L. & N. R. Co.* **v.** *Rudder,* 39 *Ga. App.* 513 (147 S. E. 795); *Western Union Telegraph Co.* **v.** *King,* 61 *Ga. App.* 537 (6 S. E. 2d, 368).

In Davis *v.* Kennedy, 266 U. S. 147 (45 Sup. Ct. 33, 69 L. ed. 212), a recovery was denied to the administratrix of an engineer, who was killed in a collision between his train and another, in an action under the Federal employers' liability act, where it appeared that it was the engineer's personal duty not to move his train forward without positively ascertaining that another train had passed. The Tennessee trial court gave the plaintiff a judgment which was sustained by the Supreme Court of that State, on the ground that the other members of the crew as well as the engineer were bound to look out for the approaching train, and that their negligence contributed as a proximate cause to the engineer's death. In reversing the State court, it was said that it was the personal duty of the engineer to ascertain positively whether the other train had passed, and that his duty was primary, as he had physical control of his train and was managing its course. It was held that it would be a perversion of the statute to allow the engineer's representative to recover for an injury directly due to his failure to act as required, on the ground that possibly the injury might have been prevented if those in secondary relation to the movement had done more. In Frese *v.* Chicago B. & Q. R. Co., 263 U. S. 1 (44 Sup. Ct. 1, 68 L. ed. 131), a recovery was denied to the administratrix of the engineer, who had been killed in a collision between his engine and the train of another railroad at a grade crossing, in an action brought

under the Federal employers' liability act, where it appeared that it was the personal duty of the engineer to ascertain that his train could safely resume its course. It was contended by the plaintiff that the injuries might have been avoided if the fireman had been more vigilant, and that even if Frese (the engineer) was negligent, this would not be a bar because of the negligence on the part of the fireman. The court held unanimously, in an opinion rendered by Mr. Justice Holmes, that "it would be a perversion of the Federal employers' liability act to hold that he could recover for an injury primarily due to his failure to act as required (by the statute), on the ground that possibly the injury might have been prevented if his subordinate had done more." In Unadilla Valley Ry. Co. v. Caldine, 278 U. S. 139 (49 Sup. Ct. 91, 73 L. ed. 224), it appeared that the conductor had disobeyed a rule of the company requiring the train to be held at a certain station to await the passing of another train, but had ordered the motorman to proceed, and was killed in a resulting collision. A judgment for damages in the New York court was reversed by the Supreme Court, in a holding that the plaintiff could not be heard to say that the accident was due in part to the negligence of the motorman in obeying the conductor's command; nor could it be attributed in part to the station-master's neglect to warn the conductor. The court held that Caldine (the conductor), or his administrator, was not entitled as against the railroad company to say that the collision was due to anyone but himself; and he could not hold the company liable for a disaster that followed disobedience of a rule made to prevent it, which disobedience was brought about by his own acts. It was also held that it was even less possible to say that the collision resulted in part from the failure of the station agent to warn the conductor that the other train was coming; and that "a failure to stop a man from doing what he knows that he ought not to do hardly can be called a cause of his act."

Following the Caldine case, it was held that where a conductor, with a definite written order to enter a certain passing track and there to wait the passing of a train from the opposite direction on the main line, in disobedience of such order went beyond the meeting point and thus brought about a head-on collision in which he was killed, his negligence was the proximate cause of his death.

The fact that a duplicate of the same order and an oral confirmation of it were not delivered to him, when he arrived at the meeting point, through the oversight of other employees, did not render the railroad liable. Southern Ry. Co. *v.* Youngblood, 286 U. S. 313 (52 Sup. Ct. 518, 76 L. ed. 1124). In the companion case of Southern Ry. Co. *v.* Dantzler, 286 U. S. 318 (52 Sup. Ct. 520, 76 L. ed. 1124), the engineer was killed on the same train, and his administratrix was denied damages on alleged negligence practically the same as in the Youngblood case. In Great Northern Ry. Co. *v.* Wiles, 240 U. S. 444 (36 Sup. Ct. 406, 60 L. ed. 732), the employee was a rear brakeman on a freight train, and was killed in his caboose when it was run into by a passenger train from the rear after his train had broken in two and stopped instantly because of a drawbar pulling out. It was the employee's duty to have gone back to protect the rear end of his train, and it was held that his failure to perform this duty was negligence proximately causing the accident, so as to bar a recovery by his administrator. It was held also that there was no justification for a comparison of negligence on the part of the employer and the employee, or the apportioning of their effect under the employers' liability act.

In Bradley *v.* Northwestern Pacific R. Co., 44 Fed. 2d, 683 (72 A. L. R. 1341), in an action under the Federal employers' liability act, the Circuit Court of Appeals held that recovery could not be had under the comparative-negligence rule, by the administratrix of the decedent's estate, where the decedent (an engineer employed by the defendant railroad company) failed to obey an order to meet and pass an extra freight train at a certain point, and was instantly killed in a head-on collision of his train with the freight train. It appeared that the conductor, the head brakeman, and the fireman all forgot to observe and carry out the rules of the company promulgated as a precaution against collisions, rules generally similar to those of the defendant company introduced in evidence in the instant case. It was contended in the Bradley case that the conduct of the conductor in failing to warn the engineer by the use of the air whistle, and the conduct of the brakeman in not calling the conductor's attention to the failure of the engineer to stop at the passing point, and the failure of the fireman likewise to remind the engineer of the meet order,

all of which was required by the rules of the railroad, was negli-· gence contributing to the cause of the accident for which the company was responsible. These contentions were rejected. Unadilla Valley R. Co. *v.* Dibble, 31 Fed. 2d, 239, in which the Supreme Court denied certiorari (280 U. S. 565, 50 Sup. Ct. 25, 74 L. ed. 618), is cited. In that case it was held that a ' motorman was not entitled to recover for injuries received by him in a collision which resulted from a violation of orders received by him, although he was given a signal by the conductor to start his train and did move forward in accordance with this signal, thus coming in collision with the freight train covered by the meet order. Yadkin R. Co. *v.* Sigmon, 267 U. S. 577 (45 Sup. Ct. 230, 69 L. ed. 796), is also cited. In that case in which the decedent (an engineer) was killed in a collision caused by operating his train in violation of train orders, it appeared that both the flagman and the conductor forgot the order, and did not signal the engineer. Instead of thus reminding the engineer of his obligation, the flagman pulled the signal cord giving the engineer the signal to go ahead, and the conductor, although apparently observing him do so, did not interfere. The Supreme Court of North Carolina held that their negligence was a contributory cause of the death of the engineer, and that the jury was therefore empowered, under the Federal employers' liability act, to apportion the recovery according to the ratio which they found should exist between the causal effect of the contributory negli-· gence of the engineer and that of the defendant railroad company in the conduct of its conductor and flagman. The Supreme Court reversed the North Carolina Court upon the authority of Davis *v.* Kennedy and Frese *v.* Chicago B. & Q. R. Co., supra.

In the Dibble case and in the Yadkin case, cited in the Bradley case, there were affirmative acts, in disobedience of the rules of the railroads involved, by members of the crew other than the person injured or killed, alleged as negligence, whereas in the case at bar only passive or inactive negligence, a failure to act, is charged against the conductor of the train on which the decedent was the engineer. In that respect the instant case is stronger on its facts, against the contentions of the plaintiff, than are the cases cited. The conductor is charged with negligence in not taking steps to stop the train when he realized that the en-

gineer had failed to give the signal indicating a meeting or waiting point, and in failing to put on the emergency brakes to stop the train, and in failing to warn the engineer over the signal system that a meeting point was about to be reached. We think that the alleged negligence of the conductor in failing to take immediate action to stop the train as required by a rule of the company, and his failure to apply the emergency brakes, if necessary, in stopping the train, was properly pleadable against the company, although most of the decisions cited above seem to hold otherwise. We base this ruling on the allegations in the petition that the conductor was in charge of the train, and that it was within his power to stop the train at any time by putting on the air brakes, irrespective of any act or omission on the part of the engineer. However, under the rulings in the Caldine, Youngblood, Dantzler, and Bradley cases, supra, we are compelled to hold that the failure of the conductor to try, by using the signal system, to stop the engineer from doing what he knew he ought not to do, cannot properly be called a cause of the engineer's act. We think that there is a difference between the positive duty enjoined upon the conductor to take action to stop the train, using the emergency brakes if necessary for this purpose, and whatever duty may have rested upon him to communicate with the engineer over the signal system. Stopping the train by applying the brakes was within the power of the conductor without regard to the engineer, whereas the failure to warn the engineer could have had no reasonable causal connection with the collision. There being no causal connection between the alleged failure of the conductor to use the signal system at the proper time and the death of the decedent, the demurrers on this point should have been sustained.

■ Grounds 5 and 8 of the amended motion complain of excerpts from the charge relating to the intercommunications signal system, and to the provisions of the Federal safety appliance act. It is not necessary for this court to pass upon these assignments of error, for the reason that they will not arise on another trial of the case. Under our ruling in division 2, the alleged failure of the conductor to warn the engineer over the signal system was not a proper ground of negligence. If the failure of the conductor to use the signal system had no causal relation to the collision and the death of the decedent, the alleged defective condition of

the system could have had none. "In an action against a railroad company for injury to one of its employees based on the defendant's violation of a Federal statute (the safety appliance act), in order to render the company liable, there must necessarily be, as in other cases, a causal connection between such violation and the injury." *Powell* v. *Waters*, 55 *Ga. App.* 307 (190 S. E. 615).

■ Grounds 10 and 11 complain of charges as follows: "In considering the question of damages, the court charges you that the law provides for a recovery by those only who are deprived of pecuniary benefits which the alleged beneficiary might reasonably have received if the decedent had not been killed. The measure of damages in such a case as this is the financial benefit which reasonably might have been expected from the decedent to the plaintiff if the decedent had not been killed." The criticism is that these charges did not confine the jury to contributions which the deceased would have made to his wife during his lifetime, nor to the present cash value of such contributions, and that the use of the term "financial benefit" was confusing to the jury. The charge as a whole shows that the court did, in immediate connection with the paragraph complained of, limit the contributions in money or services, inuring to the benefit of the wife, to the term of her husband's expectancy, and did instruct the jury to reduce the amount of the pecuniary benefits to its present cash value by any proper mathematical calculation. If more detailed instructions respecting the measure of damages were desired, it was incumbent upon the defendant to make a request therefor. W. & A. R. *v.* Hughes, 278 U. S. 496 (49 Sup. Ct. 231, 73 L. ed. 473). We find no error in these grounds.

■ Ground 12 complains of the refusal of the court to give in charge to the jury certain requests duly made by the defendant, designated as A, B, C, D, E, and F. We think that the principles embodied in requests A, B, and C were sufficiently covered by the general charge; and it is unnecessary to pass on D and E because they relate to the alleged negligence of the conductor in the use of the signal system, and all questions concerning it have been eliminated and cannot arise on another trial. The request designated as F was inapplicable to the contentions in the case, and its refusal was not error.

■ Special ground 4 alleges error in the charge on the con-

tentions of the parties that it was the duty of the conductor on train No. 12 to "stop that train immediately," upon the failure of the engineer to blow the proper meet-order signal, since the rule of the company makes it the duty of the conductor "to take immediate action to stop the train" under the circumstances stated. The charge of the court might be said to have been inapt, but we do not think that the error, if any, was sufficient to justify a reversal of the case.

Grounds 6 and 7 complain of excerpts from the charge, respecting the alleged negligence of the engineer on train No. 57 in operating that train at an excessive rate of speed, and in not keeping a proper lookout ahead, and in failing to reduce speed as he approached the meeting point. We do not think that these charges were error for any reason assigned.

Ground 9 complains of an excerpt from the charge, but shows no error. Ground 13 makes the contention that the verdict is excessive. We do not think it necessary or proper to pass on that assignment, as the case will be tried again. Ground 14 complains of the failure of the court to direct a verdict for the defendant. It is sufficient to say without elaboration that we find no error in this ground.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Sutton, P. J., and Felton, J., concur.*