## GRAHAM *v.* MARKS & COMPANY.

1. As a general rule, a promissory note, executed under the duress of the principal by legal imprisonment, is not void as to a surety thereon, if the latter, being under no duress and knowing of the duress of the principal, nevertheless voluntarily signed the note; and though knowledge of the fact of the principal's imprisonment does not necessarily involve knowledge on the part of the surety of its want of legality, a plea by the latter, alleging that the principal signed under duress of imprisonment, even if in other respects good, ought to allege that the imprisonment was illegal, or, if legal, was used for an illegal purpose; and that the surety was ignorant as to its real character, and therefore ignorant of the duress.

2. A surety upon a promissory note cannot be legally defrauded by a promise made by another to have the principal appointed to a public office, even though such a promise was made for the purpose of inducing the surety to sign. A promise of this kind being contrary to the policy of law, could not be enforced, and therefore could not, in legal contemplation, mislead the person to whom it was made.

3. A plea attempting to allege that a promissory note was given, in whole or in part, for the purpose of settling a threatened prosecution for a criminal offense, is not legally complete unless it alleges facts showing that the person to be prosecuted was charged with having committed an act or acts constituting a crime or misdemeanor.

December 21, 1895.

Complaint on note. Before Judge Van Epps. City court of Atlanta. July term, 1895.

Marks & Company by their declaration alleged, that C. M. Davis and Eliza J. Graham were indebted to them on four promissory notes, each for $85, with interest, and ten per cent. attorney's fees, and that L. E. Davis and M. Foote, Jr., attorney for Brown Brothers, were endorsers on the notes. From the copy note attached it appeared that the notes were dated April 7, 1891, were due six months after date, and were payable to M. Foote, Jr., attorney for

Brown Brothers. Davis was not served. Mrs. Graham filed a plea which was demurred to; the demurrer was sustained, and she excepted. This plea alleges, that she is merely security on the notes, and the circumstances under which she signed them are as follows: Davis purchased from Brown Brothers, at some point in the State of Alabama, in the first part of 1893 or the latter part of 1892, a lot of lumber for which he failed to pay, the lumber having been shipped here and disposed of by said Davis. Brown Brothers ordered Davis's arrest, charging that he had defrauded them out of said lumber. Davis was arrested in the town of West End by the marshal thereof, and at Davis's request he was carried to defendant's house, stating that she would sign a note for him. Whereupon it was understood that in the event that she did this, defendant would be released. Davis was accompanied to her house by the marshal of West End, and as this defendant now remembers, by Mord Foote, Esq., counsel for the plaintiffs in this case. The marshal, Caldwell, told this defendant, unless she became Davis's security and settled the matter by uniting with him in a note covering the indebtedness of Davis to Brown Brothers, that Davis would be locked up in Fulton county jail, carried back to Alabama and there prosecuted on the charge of cheating and swindling. Caldwell also told her that in the event she should sign the note, he would see to it that said Davis would get a position on the police force in the town of West End, that would pay him a salary of fifty dollars per month, and that by the time the notes matured said Davis would have made money enough to have almost extinguished said notes; and then and there agreed to give said Davis a position on the police force in the event defendant signed the note. Defendant is informed and believes that Caldwell, in the event he could get the notes secured by this defendant, was to receive fifty dollars for his trouble. For the purpose of keeping her relative from being disgraced and imprisoned and prose-

cuted, she signed said notes under the representations of
Caldwell that he would give Davis a job on the police force,
and thereby enable him (Davis) to pay off his said indebted-
ness.    She charges that these representations were wilful,
fraudulent and false; that it was not Caldwell's purpose to
give Davis a position as policeman on the police force; but it
was his sole purpose to get the matters in such shape that
he would realize the fifty dollars.    By these representa-
tions aforesaid she was induced to sign said notes, and but
for said representations she would not have signed them.
The purpose of procuring her signature to the notes was to
settle a criminal prosecution, and the same is without con-
sideration on her part and illegal.    Davis was under duress
at the time the note was obtained.    The notes were made
payable to Foote, attorney for Brown Brothers, and by him
immediately transferred to plaintiffs, for the purpose of
preventing any defense on the part of defendant to said
notes, knowing the circumstances under which they had
been procured and hoping thereby, if he could get them
into the hands of an innocent purchaser, he would shut off
any defense this defendant could possibly make.    She
charges from information and belief that the notes still be-
long to Brown Brothers; that plaintiffs have never paid for
the notes; and that it was a trick worked on the part of
Foote for the purpose as he thought of getting them into the
hands of innocent purchasers; but they are not innocent
purchasers, because they were fully apprised of the cir-
cumstances under which the notes were obtained, "and the
consideration and all the facts connected therewith, by said
Foote, they were familiar with."

   *R. J. Jordan*, for plaintiff in error.
   *M. Foote, Jr.*, and *Longino & Golightly*, contra.

ATKINSON, Justice.
   The official report states the facts.
   1. The execution of a promissory note, although under

moral or physical constraint, may nevertheless bind the maker to its payment, provided it rest upon a sufficient legal consideration. Assent may, in a legal sense, be free, notwithstanding the person assenting be induced thereto by fear of an impending evil to which, by reason of his own conduct, he has become lawfully exposed. It is therefore that the maker of a bond or promissory note upon a sufficient consideration otherwise legal, is held to be bound notwithstanding he execute the instrument to relieve himself from imprisonment and arrest, provided the imprisonment and arrest be not illegal, or, being legal, be not in the execution of an illegal purpose.

The presumption is that every arrest by an officer authorized to make it, is legal and is done in the execution of a legal purpose; and hence when, in order to relieve himself from the custody of an officer, a person so arrested executes a promissory note, upon a consideration otherwise sufficient, but with the further understanding and with the further purpose to secure his release from such arrest, and is afterwards sued thereon, in order to discharge himself from liability he must plead and prove, either that the arrest and imprisonment were illegal, or being legal, the processes of the law were prostituted to the accomplishment of an illegal purpose.

A surety upon such a paper is presumed to have knowledge of the circumstances surrounding his principal at the time he becomes his surety; and hence, in order to discharge himself from liability upon his contract, he must not only plead and prove, either the duress of his principal by unlawful imprisonment, or duress by lawful imprisonment but for an illegal purpose, and, in the latter event, must prove not only the duress of the principal, but likewise his ignorance of such duress at the time he became surety; for if he know of the imprisonment, it being legal and not used for an illegal purpose, his risk is in no measure increased by any fact unknown to him, beyond that of a surety under ordinary cir-

cumstances. If he incur a greater peril because of his be-coming surety for one so circumstanced, he does it of his own free will, and there is no good reason in law or morals why he should not respond.

Tested by the principles above announced, the plea of the surety, the defendant in the present case, in so far as the same rested upon the duress of the principal, whether accomplished by threats or imprisonment, was wholly insuf-ficient. It will be observed that there is no averment that the arrest of Davis was without authority of law; that his imprisonment was illegal, nor that, being legal, it was ac-complished for an illegal purpose. The nature of the trans-action by means of which Brown Brothers were alleged to have been defrauded was not outlined, nor is the nature of the process or action under which they undertook to bring about the imprisonment of Davis disclosed. It is possible for his arrest to have been perfectly legal; for if in buying lumber from Brown Brothers in Alabama he had intended to defraud them, the title would not have passed, and it would have been competent for them to have sued out bail-trover and thus held the principal to bail. Indeed there are many purposes for which in connection with this matter he might have been lawfully arrested, and none of these are negatived by an averment in the plea as to how and in what manner the arrest was unlawful, nor, being lawful, to what unlawful use the processes of the law were being employed. We are bound to presume then that what was done was ac-complished in some lawful manner. There was ample con-sideration, in the pre-existing indebtedness of Davis to Brown Brothers, to support the promise of the principal. The surety had full knowledge of all the facts, signed the note to bring about the discharge of the principal from law-ful custody, accomplished that result; and accordingly, in so far as the averments of her plea sought to negative her liability, she was legally bound. 2 Woods' Reports, 372; 75 *Ga.* 549 (3); 81 *Ga.* 804.

2. The plea of the surety to the effect that she was induced to sign the note because of the promise of the arresting officer to secure the appointment of her principal to an office of public trust and emolument, was wholly without merit. Admitting that the promisor had authority to make the appointment, if the averments of the plea be true, the contract could amount to nothing more than a corrupt bargain upon the part of the surety to buy, and upon the part of the officer to sell, a public office. Such transactions the law does not countenance, and therefore propositions of that character coming from the officer to the surety could not, in contemplation of the law, mislead her. There was sufficient consideration to support the promise of the surety in the legal obligation of the principal to pay. So that while the matter stated might have operated upon the mind of the surety as an inducement to become such, it was no part of the consideration upon which her obligation to pay rested; and it is only where the element of illegality enters into and infects the consideration of the contract, that the law pronounces it void. The law charges every person with knowledge of its limitations upon the power of public officers, and of the barriers which it throws around public office to protect it against influences which tend to corrupt. Therefore the surety must have known that the officer had no right to make, much less power to execute his promise; and therefore such representations could not possibly have misled or induced her to act to her prejudice.

3. In so far as the plea attempted to allege that it was given for the purpose of settlement of a criminal prosecution, it was entirely without merit. It pleaded a simple conclusion of law. It did not allege that the principal had committed any offense, or aver the facts from which the court could determine either that he was being prosecuted or the nature of the offense charged against him. In the absence of such averments, it could not be judicially determined that the note was given for the purpose of suppress-

ing a prosecution.    The demurrer admitted only such facts as were well pleaded, but does not admit conclusions either of law or fact, where the facts are not averred upon which such conclusions are supposed to rest.

<em>Judgment affirmed.</em>