29093. WESTERN & ATLANTIC RAILROAD *v.* FRAZIER.

DECIDED DECEMBER 2, 1941.

*Tye, Thomson & Tye,* for plaintiff in error.

*Hewlett & Dennis, T. F. Bowden,* contra.

STEPHENS, P. J. J. T. Frazier brought suit against Western & Atlantic Railroad in which he alleged that he was a yard conductor for the Southern Railway, and that his duties at times required him to make deliveries of cars to the yards of the defendant; that for the purpose of interchanging cars there was a transfer track connecting a track of the Southern Railway with the south-bound

main line of the defendant; that upon reaching the switch at the defendant's main line he alighted from the engine on which he had been riding in the space between the defendant's north-bound and south-bound tracks, so that he might give a signal to his engineer to go forward to the defendant's yards and after the passage of his train to throw the switch connecting the transfer track with the defendant's south-bound main line; that, having given the signal and while his train was proceeding, he heard a noise to the south, quickly turned his head in that direction and was immediately struck by a train of the defendant which was then proceeding over a north-bound main line, which train consisted of two freight cars being pushed by an engine in the northerly direction; that the defendant failed to have any person stationed on the forward end of the freight car to act as a lookout and give warning signals to him; that as he dismounted from his engine he looked southwardly and saw no approaching train on the defendant's tracks, nor did he hear the same at any time until the instant before he was struck; that the train was being run at the reckless speed of thirty miles per hour; that no lights were displayed on the forward end of said freight car and no warning of any kind was given him; that the purpose and use of the transfer track, in the exercise of ordinary care, should have been known to the defendant and its servants in charge of the train; that by reason of the impact he received severe and permanent injuries; that his injuries were solely occasioned by the defendant's negligence as follows: (a) in running the train at the reckless rate of speed aforesaid having in view the character of the locality; (b) in failing to maintain a lookout on the end of the forward car of its train; (c) in failing to give a signal or warning by bell or whistle of the approach of the train; (d) in failing to have the forward car equipped with a back-up hose by which the emergency brake might have been immediately applied; (e) in failing to place a light on the forward end of the train; (f) in failing to anticipate the presence of the plaintiff at the time and place and to control the movements and speed of the train so as to avoid doing injury to him. In an amendment the plaintiff added a specification of negligence as follows: (g) in failing to stop the train after having knowledge of the presence of the plaintiff between its tracks.

The defendant filed an answer denying the allegations of negli-

gence and alleging that the sole proximate cause of the plaintiff's injury was his own negligence, in that he did not exercise ordinary care for his own safety at the time of his injury. In two amendments to the answer the defendant elaborated its allegation as to the plaintiff's negligence by alleging that, instead of swinging off his engine to the east side of the track between its main lines, he should have alighted on the west side where was situated the stand and lever of the switch which he was intending to throw. The defendant further alleged that the plaintiff was familiar with the nature and use of the north-bound main line, and if he had looked southwardly before alighting from his engine he could have seen an approaching train on this main line for a distance of more than 700 feet, and that he did not look when he dismounted from the engine and did not use his sense of sight in an ordinarily diligent manner. The defendant denied that its servants who were operating the train had any notice or knowledge that any member of the crew of an engine using the transfer track would swing off between the main-line tracks at such point, and alleged that the plaintiff swung off when the lead car of the Western & Atlantic train was within approximately forty feet of the place where he swung off, and though the employees in charge of the Western & Atlantic train did all within their power to prevent injury to the plaintiff and immediately applied the brakes in emergency, it was impossible to stop the train before it passed the point where the plaintiff swung off. The defendant further alleged that its train was operated with all due care and caution; that the speed was the usual and customary speed for switching movements, and that it had placed two switchmen on the forward car who were keeping a diligent lookout in the direction in which the train was moving; that these switchmen both saw the plaintiff swing off his engine and holloed to him as loud as they could, and gave the engineer a stop signal, and that the engineer immediately applied his brakes in emergency.

The defendant further alleged that the plaintiff knew the character and use of the defendant's main-line tracks and of the interchange track which runs in a northerly direction from the southern track to the defendant's south-bound main line, a distance of 480 feet; that during the entire time the Southern engine, and cars were traveling over the interchange track the Western & Atlantic train was approaching on the north-bound main line, and was

clearly visible by the plaintiff had he looked in the direction from which the Western & Atlantic train was approaching; that when the Southern Railway train reached the switch connecting the interchange track with the south-bound main-line track the plaintiff suddenly swung off his engine to the east of the track and in the space between the south-bound and north-bound main lines, without looking back to see whether or not any train was approaching on the north-bound main line. The defendant further alleged that the movement in which the Southern Railway train was engaged necessitated the use by it of the defendant's south-bound main line and a crossing over of the defendant's north-bound main line by the train, and in using these tracks the crew of a Southern Railroad switch engine were governed by the instructions and rules of the defendant with reference to such use; that among such rules it was provided that before the tracks could be used for such movement the foreman of the Southern Railway crew should telephone the operators at Bolton and at tower No. 1 to ascertain from them the location of such trains and engines using main tracks that might be affected in the contemplated movement, and that the plaintiff made no inquiry or effort to ascertain from the operator at tower No. 1 whether or not such track was being used by any engine or train, and that at the time of the injury the defendant's engine and cars were making a switching movement on the north-bound track in a northerly direction, passing by tower No. 1 shortly before the time the plaintiff was injured, and that if the plaintiff had telephoned the operator in tower No. 1 he would have ascertained that the defendant's train was approaching on its north-bound main line. The defendant further charged that the plaintiff was negligent in failing to remain in the clearance between the main-line tracks under the existing conditions, and in failing to look southward along the north-bound main line after he alighted from his engine, in an endeavor to ascertain whether any engine or train was approaching, and in remaining at the transfer track switch instead of accompanying his engine to the Western & Atlantic Railroad yard as it was his duty to do.

The jury found for the plaintiff $8000. The defendant moved for a new trial on the general grounds and on a number of special grounds. This motion was overruled, and the defendant excepted.

■ Grounds 4 and 5 of the motion complain of failure to charge

the jury as to the duty of the plaintiff to have exercised ordinary care during the time between dismounting from his train and being struck by the defendant's train. It was specifically pleaded by the defendant that the plaintiff was guilty of negligence in failing to look back during the time stated, and the defendant submitted a request to charge the jury specifically in substance that it was the duty of the plaintiff to exercise ordinary care after alighting from his engine and while he was in the space between the main-line tracks, that ordinary care is that care which every prudent man would exercise for his own safety under the same circumstances, and that if they should find from the evidence that a prudent man in exercising ordinary care after he was in the space between the defendant's main lines would have exercised his sense of sight in an ordinarily diligent manner to determine the approach of an oncoming train on the adjoining track, then it was the duty of the plaintiff to use his sense of sight in an ordinarily diligent manner to determine the approach of an oncoming train. Under the facts of this case and the contentions of the parties it was error for the court to refuse this request. It is insisted by the plaintiff that the request was sufficiently covered by an instruction of the court to the effect that the law requires the injured party himself to use ordinary care and diligence to prevent injury to himself, and "every one, wherever he goes must use ordinary care for his own safety, and that principle of law was applicable to the plaintiff in the circumstances now under investigation." The plaintiff testified that just as he alighted from his engine he glanced back and did not see any train approaching on the north-bound main line. He also testified that after alighting he did not look back along the north-bound main line. The place where the plaintiff alighted was between the defendant's two main lines, between which the space was about four feet nine inches, which was wide enough for a man to stand safely between two trains moving on the north- and southbound main lines. It thus became very material for the jury to consider whether in the exercise of ordinary care the plaintiff should have looked after alighting safely on the ground. Another criticism of the request to charge is in the use of the expression "if you should find from the evidence that a prudent man, etc.," as restricting the jury unduly in determining what a prudent person would do. The expression "if you should find from the evidence"

was equivalent to the expression "under the facts of the case," and did not render the request erroneous. While it may be that the request was covered by the charge as given, the charge as given was expressed in very general and abstract terms. *Metropolitan Street R. Co.* v. *Johnson,* 90 *Ga.* 500 (5) (16 S. E. 49). It is contended for the plaintiff that subsequent decisions have shaken the force of the *Johnson* case. But it has never been overruled. It is also sought to distinguish the *Johnson* case from the present case, because the former was "a close and doubtful case." In this respect, the present case is not distinguishable from the *Johnson* case. What is said here disposes of grounds 16 and 18 of the motion.

■ Ground 6 complains of the refusal of a request to charge the jury "that there can be no recovery based on any negligence save such as is alleged in the plaintiff's petition, and that negligence, to be the basis of recovery, must be the proximate cause of the injury. If the injury would have occurred regardless of the alleged acts of negligence there can be no recovery." This request was legal and pertinent. It was not distinctly covered by the charge as given. Under the evidence, it may have been true that the injury occurred immediately after the plaintiff alighted from the train, and the alleged negligence of the defendant may have been immaterial as not constituting the proximate cause. This request to charge should have been given. See *Vinson* v. *Willingham Cotton Mills,* 2 *Ga. App.* 53 (4) (58 S. E. 413) ; *Western & Atlantic R.* v. *Leslie,* 48 *Ga. App.* 714 (173 S. E. 170) ; *Western & Atlantic R.* v. *Crawford,* 47 *Ga. App.* 591 (170 S. E. 824).

■ The exceptions to the charges set out in grounds 7, 8, 9, 11, and 12 are without merit. It appears that the court was merely stating in a general way the plaintiff's allegations and at the same time the court instructed the jury that they could consult the pleadings to ascertain the contentions of the parties.

■ The court erred in refusing the request to charge set out in ground 10. This request was as follows : "I charge you that if you should determine from the evidence that defendant was under no duty to anticipate the presence of plaintiff between its mainline tracks as its engine and cars approached the place where plaintiff's injuries are alleged to have occurred, and had no knowledge of the presence of plaintiff at such place until a warning by bell or whistle would have been ineffectual, then I charge you that

defendant was not negligent in/ failing to ring its bell or blow its whistle and you will not be authorized in predicating a recovery upon such specification of negligence." This is in effect the same error pointed out in what has been said regarding ground 6, except that this latter request refers specifically to giving a warning by bell or whistle.

■ The charge to the jury complained of in ground 13 was as follows: "Another act of negligence charged against the defendant is failure to have anticipated the presence of the plaintiff at the time and place of 'the alleged injury. If the jury should believe that the defendant was under no duty to anticipate the presence of the plaintiff at the time and place of his injuries and did not know of his presence there in time to prevent injury to him (if the jury should believe that the plaintiff was injured by the defendant), and that the defendant could not, by the exercise of ordinary care, have prevented injury to the plaintiff when his position became known to the defendant, then and in that event there would be no negligence in failure to anticipate the presence of the plaintiff. If, on the other hand, the jury should believe that in the circumstances of the case it was the duty of the defendant to have anticipated the presence of the plaintiff at the time and place and under the circumstances where the plaintiff claims to have been injured, and if the jury should believe that the defendant failed to anticipate his presence, and if that anticipation of his presence was the exercise of ordinary care to do so, then and in that event such failure would constitute an act of negligence, but it would still remain a question for the jury to determine whether or not such failure was the cause of injury to the plaintiff." This instruction is complained of as confusing and misleading on the issue whether or not the defendant was negligent in failing to anticipate the presence of the plaintiff, because it presented matters irrelevant and confusing to that issue, namely, the defendant's knowledge of the plaintiff's presence in time to have prevented injury to him, and also the general question whether the defendant by the exercise of ordinary care could have prevented injury to the plaintiff. Another criticism of this instruction is that it was inaccurate and incomplete, because the court did not instruct the jury as to the conditions and circumstances under which it would become the duty of the defendant to anticipate the presence of the plaintiff. This

is not a valid criticism for the reason assigned, to wit, that it left the door open to the jury to find the truth of that issue without giving them any instruction about any circumstances under which the duty would arise. The charge was not error for the reasons urged.

■ Ground 14 complains that the court instructed the jury that "if plaintiff in stepping off the engine was not guilty of lack of ordinary care and did not know that it was an unsafe place, and by the exercise of ordinary care could not have known it, then he would not be guilty of lack of ordinary care in that respect." The point made is that the court submitted to the jury the question whether the plaintiff knew that the place was unsafe when the evidence showed that he did know it. This objection is not well taken because the unsafety of the place consisted in the approach of a train on the north-bound main line. There was no physical defect or menace in the place itself. Hence it was not error for the court to charge thus as to plaintiff's knowledge of the unsafeness of the place.

■ It was not error to refuse the request set out in ground 15 because it was covered by the charge as given.

■ In ground 17 it is complained that the court did not sufficiently instruct the jury on the defendant's contention that the plaintiff's failure to telephone the operator at tower No. 1 before going on the transfer track was a violation of the rule of the defendant requiring him to do so, and constituted the proximate cause of the injury. The evidence does not show what were the duties of the operator at tower No. 1, or what information the plaintiff would have received, if he had telephoned, as to the movement of the switching train on the north-bound main line. It does not appear that the operator of tower No. 1, which was three fourths of a mile distant from the scene of the injury, knew of the movement of the north-bound train or what time this train passed the tower. In the state of the evidence the jury would not have been authorized in finding that the failure to telephone the operator at tower No. 1 was negligence or was the proximate cause of the injury. Consequently the court was not required to charge anything about this contention, especially as there was no request for a charge on it.

■ The request set out in ground 19 was properly refused because it was argumentative and inaccurate in referring to "north-

bound trains," the evidence being undisputed that there was at the time no scheduled train which would affect the movement of the plaintiff's train, the plaintiff having been so informed by the operator at Bolton. *Caraker* v. *Brown,* 152 *Ga.* 677 (3) (111 S. E. 51). The operator at Bolton is other than the operator at tower No. 1.

 It was a technical error to refuse the request set out in ground 20. This request related to the plaintiff's allegation that the defendant did not have a light on the forward end of the train which struck the plaintiff. The court was requested to charge that if the plaintiff's injury would have occurred regardless of whether a light had been placed on the forward end of the train there could be no recovery on this specification of negligence. It is true that the evidence shows that the injury occurred by daylight, and the plaintiff does not seem to have insisted upon his allegation in regard to the light. But there was no disclaimer or amendment by the plaintiff which abandoned his allegation as to this ground of recovery. What was said in regard to ground 6 applies also to this ground.

 A long portion of the court's charge is complained of in ground 21 on the ground that the court in charging as to the computation of damages failed to mention specifically the probable decrease in earning capacity which would be due to increasing age. There was no request for an instruction on this point. In the absence of such request the charge was sufficient. *Merchants & Miners Transportation Co.* v. *Corcoran,* 4 *Ga. App.* 654 (6a) (62 S. E. 130) ; *Central of Georgia Railway Co.* v. *Ray,* 129 *Ga.* 349 (58 S. E. 844) ; *Central Railroad* v. *Anderson,* 43 *Ga. App.* 189, 191 (3) (158 S. E. 333). Besides, the jury were instructed that they could consider any evidence "that might reasonably enter into his capacity to earn."

As another trial of the case must be had, it is not necessary to discuss the general grounds of the motion. The court erred in overruling the motion for new trial.

*Judgment reversed. Sutton and Felton, JJ., concur.*