41001. DAVIS v. AIKEN et al.

DECIDED MARCH 12, 1965—REHEARING DENIED APRIL 2, 1965.

*Sheats, Parker & Webb, Mathew Robins, John Tye Ferguson, Robert J. Noland,* for plaintiff in error.

*R. M. Reed, Reed, Ingram & Flournoy, Perren & Lane, John T. Perren,* contra.

PANNELL, Judge. Douglas Davis brought an action in tort in the Superior Court of Douglas County against Howard Aiken, a resident of said county, Charles Hardy, a resident of Paulding County, and Jack Lane, a resident of Cobb County. The peti-

tion, omitting the formal parts and the allegations relating to injuries and doctor's bills, etc., is as follows:

"That on June 9, 1962, and at all times hereinafter mentioned, defendants Aiken and Hardy operated for profit the Dallas Drag Strip in Paulding County, Georgia.

"Said Dallas Drag Strip was a paved strip or track upon which automobiles would race, either singly or two abreast, in order to determine which automobile could travel a given distance in the shortest length of time. Defendants Aiken and Hardy would solicit the participation of various drivers of automobiles in the races conducted at the said Dallas Drag Strip. *Said drivers would furnish their own automobiles.* Said defendants would charge admission fees for spectators to enter the premises controlled by them and view said automobile racing. No grandstands were provided for the benefit of such spectators but they would view the races from *positions* alongside said paved track or strip.

"On the date aforementioned there was no solid barricade or fence placed alongside said track or strip aforesaid in order to protect spectators. There were no signs warning the public of any danger in approaching or being near the track or strip.

"Defendants Aiken and Hardy would permit various types of automobiles to be raced at said Dallas Drag Strip. One such type was a 'dragster' or 'rail' type. This type of automobile consists usually of only four (4) wheels, a *home manufactured* chassis and a *home manufactured* motor.

"Prior to permitting automobiles to race at said Dallas Drag Strip defendants Aiken and Hardy made only a cursory inspection of the same, inspecting only brakes and steering mechanism of the vehicle to be raced. Neither of the said defendant's nor any of their agents, servants or employees would drive said automobiles or require the same to be driven in their presence prior to permitting said automobiles to race.

"Plaintiff shows that on June 9, 1962, he paid an admission fee of one dollar and fifty cents ($1.50) and entered the premises known as the Dallas Drag Strip, which was operated by the defendants Aiken and Hardy for the purpose of viewing the races to be conducted.

"At or about 10:00 o'clock P.M. on the date aforementioned, plaintiff was approximately one-third (1/3) to one-half (1/2) of the way from the beginning to the end of said track or strip. *He was standing twelve (12) feet to fifteen (15) feet from the pavement watching automobiles race.*

"As plaintiff watched said automobiles race, *a piece of metal, the exact nature of which is unknown to plaintiff but is well known to the defendant Lane, came off one of said automobiles owned and driven by the defendant Lane.* Said piece of metal came across the pavement and unpaved strip and struck plaintiff on his left leg, fracturing the same, causing plaintiff to suffer great pain and disabling him.

"The automobile from which said metal came was a 'dragster' which had been constructed by the defendant Lane. Said automobile had not been driven by the defendants Aiken or Hardy or any of their agents, servants or employees, nor had it been driven in the presence of any of them prior to the time that said automobile was driven in the race aforesaid on the night of June 9, 1962.

"Said injuries and damage were not caused by any fault on the part of the plaintiff but were directly and proximately caused by the following acts of negligence on the part of the defendants Aiken and Hardy, their agents, servants, representatives and employees, as follows: (a) By failing to exercise ordinary care in keeping the premises of the Dallas Drag Strip safe for spectators. (b) By failing to exercise ordinary care in not placing adequate fences or barricades along the paved strip or track so that spectators at the Dallas Drag Strip *would not be injured by parts coming off of automobiles.* (c) By failing to give any warning to spectators at the Dallas Drag Strip that *parts of automobiles* were likely to come off said automobiles and strike spectators, in violation of the requirements of ordinary care and diligence. (d) By failing to make adequate inspection of vehicles to be raced at Dallas Drag Strip to determine if the vehicles were in good mechanical condition and free from danger to the public, in violation of the requirements of ordinary care and diligence. (e) In sponsoring and operating a *dangerous instrumentality* in a public and crowded place, in violation of the requirements of ordinary care and diligence.

"Said injuries and damage were not caused by any fault on the part of the plaintiff but were directly and proximately caused by the following acts of negligence on the part of the defendant Lane, as follows: (a) In constructing and operating a 'dragster' *which was likely to lose parts when racing,* in violation of the requirements of ordinary care and diligence. (b) In operating a dangerous instrumentality in a public and crowded place, in violation of the requirements of ordinary care and diligence. (c) In failing to make an adequate inspection of his 'dragster' prior to racing it on June 9, 1962, in violation of the requirements of ordinary care and diligence.

"These acts of negligence were the direct and proximate cause of the injuries to plaintiff and he could not have avoided the results of said negligence by the exercise of ordinary care after he had learned of the negligence."

Aiken and Hardy demurred to the petition on the ground that it set forth no cause of action against either of them. The defendant Jack Lane demurred to the petition on the ground that it set forth no cause of action against him. These demurrers were sustained by the trial judge, and the plaintiff has brought the case to this court for review assigning error on said ruling.

Specifications of negligence do not constitute the entire pleading and the fact that the petition may contain general allegations of negligence which are good as against a general demurrer does not demand the conclusion, or necessarily justify the conclusion, that the petition as a whole sets forth a cause of action. Negligence alone does not give a right of action to an injured person against the negligent person unless the negligence be the proximate cause of the injury and damage. *Western & A. R. v. Frazier,* 66 Ga. App. 275 (18 SE2d 45); *Kleinberg v. Lyons,* 39 Ga. App. 774 (148 SE 535); *Doby v. Florence Constr. Co.,* 71 Ga. App. 888 (32 SE2d 527); *Stallings v. Georgia Power Co.,* 67 Ga. App. 435 (20 SE2d 776); *Western & A. R. v. Crawford,* 47 Ga. App. 591 (170 SE 824); *Queen v. Patent Scaffolding Co.,* 46 Ga. App. 364 (167 SE 789); *Williams v. Southern R. Co.,* 76 Ga. App. 559 (46 SE2d 593); *Gallovitch v. Ellis,* 55 Ga. App. 780 (191 SE 384); *Powell v. Waters,* 55 Ga. App. 307 (190 SE 615); *Walters v. Berry Schools,* 40 Ga. App. 751 (151 SE 544).

While negligence, to be actionable in this State, carries with it the concept of foreseeability, *Hulsey v. Hightower*, 44 Ga. App. 455, 459 (161 SE 664), and this may to some extent involve proximate cause as an ingredient of actionable negligence, proximate cause itself, aside from negligence, is an essential element in an action based on negligence. *Andrews & Co. v. Kinsel*, 114 Ga. 390 (2) (40 SE 300, 88 ASR 25). "To state a cause of action for negligence, the plaintiff must aver facts showing that the defendant committed an act of negligence proximately causing the plaintiff's injury. *Ayers v. L. & N. R. Co.*, 5 Ga. App. 454 (63 SE 530), *Gillespie v. Andrews*, 27 Ga. App. 509 (1) (108 SE 906), *Jernigan v. Georgia R. & Power Co.*, 31 Ga. App. 273 (1) (120 SE 439), *Southern R. Co. v. Edwards*, 45 Ga. App. 255 (164 SE 218), *Powell v. Waters*, 55 Ga. App. 307 (1a) (190 SE 615), and *Perry v. Central Railroad*, 66 Ga. 746 (4)." *Williams v. Southern R. Co.*, 76 Ga. App. 559, 562, supra. Even though the plaintiff may have alleged in direct terms that the acts of negligence alleged were the proximate cause of the injury, the allegation of proximate cause is a mere conclusion unless the facts alleged support that conclusion, and this conclusion is to be disregarded where the particular facts are contradictory of it, or even where they merely fail to support it. *Flynt v. Southern R. Co.*, 7 Ga. App. 313 (1) (66 SE 957); *Southern Wood Preserving Co. v. Resaca Lumber Co.*, 29 Ga. App. 501 (2) (116 SE 32); *Meriweather v. Atlanta Transit Co.*, 83 Ga. App. 783, 788 (64 SE2d 702); *Green v. Spears*, 181 Ga. 486, 490 (182 SE 913). Compare *Guardian Life Ins. Co. v. McMichael*, 74 Ga. App. 53 (38 SE2d 689), where, in a suit on an insurance policy, an allegation that the injury was caused solely through accidental means was held to be an allegation of ultimate facts. Even under the application of this rule where the facts pleaded contradict the allegation of proximate cause, this contradiction does not necessarily have to arise out of the direct allegations of fact, but may arise out of legitimate inferences from the facts alleged. *Wood v. Pynetree Paper Co.*, 29 Ga. App. 81 (114 SE 83). It becomes necessary, therefore, to examine the allegations of the petition in the present case in order to determine whether the acts of negligence alleged are the proximate cause of the injuries

received by the plaintiff. "The demurrer admitted only such facts as were well pleaded, but does not admit conclusions either of law or fact, where the facts are not averred upon which such conclusions are supposed to rest." *Graham v. Marks & Co.*, 98 Ga. 67, 73 (25 SE 931). It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties. *Krueger v. MacDougald*, 148 Ga. 429 (1) (96 SE 867). Where pleadings do not make distinct and positive allegations but are couched in ambiguous or uncertain expressions, on demurrer they will be given the construction most unfavorable to the pleader. *Baggett v. Edwards*, 126 Ga. 463 (1) (55 SE 250). Mere conclusions add nothing to the facts alleged. *Thomas v. Georgia Granite Co.*, 140 Ga. 459 (79 SE 130). A conclusion must yield, on demurrer, to the particular facts shown if inferences therefrom contradict the conclusion. *Moore v. Seaboard Air-Line R. Co.*, 30 Ga. App. 466 (118 SE 471). In such a case, the petition must be construed in the light of omissions as well as averments. *Washburn Storage Co. v. General Motors Corp.*, 90 Ga. App. 380, 385 (83 SE2d 26). It is alleged in the petition that no grandstands were provided for spectators "but they would view the races from *positions* alongside" the drag strip. This allegation is ambiguous and does not definitely disclose whether or not the positions alongside the drag strip were designated by the defendant operators. Construing this allegation most strongly against the pleader, this allegation would indicate that, while there were no grandstands, positions alongside the drag strips were provided for spectators. The further allegation that the plaintiff was standing 12 or 15 feet from the pavement is not an allegation that he was in a position reserved for spectators. See *Tatum v. Clemones*, 105 Ga. App. 221 (124 SE2d 425). The allegation that a piece of metal, the exact nature of which is unknown to plaintiff, came off one of said automobiles driven by the defendant Lane, is not an allegation that the automobile was defective, nor is the allegation that the automobile was homemade an allegation that the automobile was defective.

The allegations of negligence against the defendants who operated the drag strip will be taken up in their order: (a) by failing to exercise ordinary care in keeping the premises safe for spectators. There is no allegation of fact in the petition showing that the drag strip was not safe for spectators, where spectators were supposed to be; (b) by failing to place fences or barricades along the track so that spectators would not be injured by parts coming off automobiles. Again there are no allegations of fact showing that spectators in their proper place would be injured by parts coming off automobiles, nor are there any facts alleged showing that the defendants knew, or in the exercise of ordinary care should have known, that parts would come off the automobiles. The same holds true of allegation (c) of failure to warn spectators that parts of automobiles were likely to come off. As to allegation (d) relating to their failure to make adequate inspection of the cars to determine if the vehicles were in good mechanical condition, etc., there is no allegation that the car was defective or that an inspection of the car, the failure of which inspection is alleged to be negligence, would have disclosed the defect, if any. In the absence of such allegations, we must assume that it would not have disclosed the defect even if the car was defective. Under these circumstances, the failure to inspect, even though negligent, could not possibly be the proximate cause of the injury to plaintiff. The operators of the drag strip are charged with negligence in operating and sponsoring a dangerous instrumentality. There are no allegations that any dangerous instrumentality was being operated, nor would the facts alleged support such allegation if there were such.

The owner and driver of the car is charged with negligence in operating and constructing a dragster "which was likely to lose parts when racing." There is no allegation that the plaintiff was injured by any *parts* lost from the dragster, nor is it alleged that this defendant knew, or in the exercise of ordinary care, should have known, that the automobile was likely to lose parts when racing; and, further, the petition specifically alleges that it was a piece of metal, the nature of which was unknown. The owner and driver is also charged with operating a dangerous instrumentality in a public and crowded place. This is a bare

conclusion and there are no facts alleged showing that the automobile operated by the defendant Lane was a *dangerous instrumentality*. Lane is also charged with failing to make an adequate inspection prior to racing his car. The facts alleged do not disclose that an inspection would have discovered the defect, if any. If the inspection would not have discovered the defect, then the failure to inspect cannot be the proximate cause of any injury to the plaintiff. The whole case depends upon the failure of the petition to allege that an inspection would have discovered the alleged and claimed defect. If an inspection would have failed to disclose such alleged defect to any of the defendants, then the negligence alleged against them could not have been the proximate cause of the injury to the plaintiff.

The pleader in the present case contends that under the doctrine of res ipsa loquitur these various deficiencies may be inferred from the allegations of the petition. This doctrine does not apply to pleadings; it is only a rule of evidence. *Hudgins v. Coca Cola Bottling Co.*, 122 Ga. 695 (4) (50 SE 974). Defective pleadings cannot be aided by the maxim "res ipsa loquitur." *Weems v. Albert Pick & Co.*, 33 Ga. App. 579 (1d) (127 SE 819). It is not enough to aver facts from which the ultimate fact may be inferred unless the evidentiary facts pleaded are such as to demand the inference of its existence. *Bivins v. Tucker*, 41 Ga. App. 771, 774 (154 SE 820). Essential averments will not be construed into pleadings. *Groover v. Simmons*, 163 Ga. 778, 781 (137 SE 237). Controlling similarity of the present case to *Macon Telegraph Publishing Co. v. Graden*, 79 Ga. App. 230 (53 SE2d 371), as contended by plaintiff in error, can only be accomplished by indulging in inferences not demanded by the pleading demurred to. This we cannot do under the rules above set forth. It follows, therefore, that the trial court did not err in sustaining the general demurrers to the petition.

*Judgment affirmed. Nichols, P. J., Bell, P. J., Frankum and Russell, JJ., concur. Jordan and Eberhardt, JJ., concur specially. Felton, C. J., and Hall, J., dissent.*

EBERHARDT, Judge, concurring specially. Since it appears from the allegations of the petition that plaintiff was in an un-

protected area alongside the track when he was injured, it must be concluded, as was held in *Tatum v. Clemones,* 105 Ga. App. 221 (124 SE2d 425), that "with a knowledge of the dangers inherent to one occupying such a position [he] assumed the risk of injury, and the trial court did not err in sustaining the defendant[s]' general demurrer[s]."

I am authorized to state that Judge Jordan concurs in this view.

FELTON, Chief Judge, dissenting. A casual reading of the petition will show that there are enough general allegations of negligence to render the petition immune to attack by general demurrer. "The rule is firmly fixed in the adjudications of this court that while as against a general demurrer a mere general averment of negligence will suffice, a plaintiff must, when called on by special demurrer to do so, specify wherein the negligence consisted and the particulars thereof." *Hudgins v. Coca Cola Bottling Co.,* 122 Ga. 695, 698 (50 SE 974). The holdings that a general allegation of negligence is good as against a general demurrer are too numerous to mention. The petition in this case, in my opinion, is not subject to general demurrer. The special demurrers calling for particulars were not passed upon. See *Macon Telegraph Publishing Co. v. Graden,* 79 Ga. App. 230 (53 SE2d 371). *Tatum v. Clemones,* 105 Ga. App. 221 (124 SE2d 425) is distinguishable on its facts.

The above rule applies to an allegation of proximate cause. There are no allegations in the petition which contradict the general allegations of negligence or probable cause. I do not think that the plaintiff, as a matter of law, assumed the risk of the peculiar injury shown by the petition to be involved in this case.

HALL, Judge, dissenting. I concur fully in Chief Judge Felton's dissent. Since my first semester in law school I have always been under the impression that a general allegation of negligence was good as against general demurrer. Also, that as against a general demurrer, no particular form is required in alleging causal connection between the negligence charged and the injury, and that, as a general rule it is sufficient to make a direct allegation that plaintiff's injury resulted from or was caused by

such negligence. *Pollard v. Heard,* 53 Ga. App. 623, 626 (186 SE 894) ; *Kuhr v. Frizzelle,* 74 Ga. App. 524 (40 SE2d 405) ; 65 CJS 904, § 188. I am surprised to learn from five of my associates that they do not understand this to be the law. This would also come as somewhat of a shock to Mr. Chitty, Blackstone and Lord Coke if they were still alive. I am sure they would be amazed at the liberality of common-law pleading in their day compared to our present system.

The petition contains a general allegation of negligence against the operators of the drag strip in that they failed to exercise ordinary care in keeping the premises of the strip safe for spectators who had paid an admission fee collected by these defendants. Five members of the court have held as a matter of law that these defendants have *not failed* to keep the premises *safe* for spectators, i.e., there was no unreasonable risk of harm; they are joined in their judgment by two other members of the court who hold as a matter of law that the premises are so *unsafe* that the plaintiff is barred from recovery under the doctrine of assumption of risk. It has been said that the life of the law is logic. The plaintiff in this case will probably have a difficult time understanding this maxim. As to my views on negligence as to invitees and assumption of risk see *Kreiss v. Allatoona Landing, Inc.,* 108 Ga. App. 427, 438-442 (133 SE2d 602).

It is interesting to note that while the plaintiff's petition is composed of only five and one-half typewritten pages, the majority opinion labors for eighteen typewritten pages drawing inference after inference and construction after construction to arrive at the conclusion that the plaintiff has failed to allege a cause of action in negligence as against a general demurrer. While special demurrers were filed but not passed upon by the trial judge, the effect of what the majority opinion has done is to hurl ex mero motu one special demurrer after another at the petition.

Two judges who fail to join with the other five on the latter opinion, rely on *Tatum v. Clemones,* 105 Ga. App. 221 (124 SE2d 425) which holds as a matter of law that the plaintiff had assumed the risk by viewing a race from an unprotected

place. In my opinion, this case and others like it should be overruled. They seek as a matter of law to brand anyone with gall enough to purchase a ticket to observe a drag race on a public strip as an outlaw or leper for whom the law will provide no remedy. Under this theory reasonable men cannot differ that a spectator (business invitee) in attending these races assumes all danger, whether known or unknown and whether the proprietor exposes him to it reasonably or unreasonably. Apparently the great social evil of auto racing is not its operation by one as a business for profit but the witnessing of it for pleasure.

In the latter part of 1964, the State Bar of Georgia conducted a survey on the question of whether our rules of pleading and practice should be simplified. The vote was overwhelming in the affirmative (for 2565—against 287). A bill is now pending before the Georgia General Assembly that will exhaustively modernize civil pleading and practice rules in the trial courts of this State. The keystone of these rules is that "All pleadings shall be so construed as to do substantial justice." They seek to assure an adjudication on the merits rather than on myopic technicalities of pleadings.

If anyone has any doubts as to the need of this proposed legislation, let him read the opinions in this case.